UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CORNING INCORPORATED,

                Plaintiff,

vs.

SHENZHEN XINHAO
PHOTOELECTRIC TECHNOLOGY
CO., LTD.,

                Defendant.

**DECLARATION**

Civil Action No.: 6:18-cv-6739

I, Calvin E. Wingfield Jr., hereby declare as follows:

1.     I am an attorney at the law firm of Goodwin Procter LLP, counsel for Defendant Shenzhen Xinhao Photoelectric Technology Co., Ltd.  I am a member in good standing of the Bar of the State of New York.

2.     I submit this Declaration in support of Defendant Shenzhen Xinhao Photoelectric Technology Co., Ltd.'s Motion to Dismiss pursuant to Rule 12(b)(6).  I submit this Declaration to authenticate and provide to the Court certain documents cited to and referenced in the motion and to provide any other information relevant thereto.

3.     I have personal knowledge of the facts stated in this Declaration and am competent to testify to the same.

4.     Attached hereto as **Exhibit A** is a true and correct copy of a letter, with translation, from Messrs. McConnell and Schaeberle to Mr. Liang.

5.     Attached hereto as **Exhibit B** is a true and correct copy of the General Commercial Framework Agreement, entered into as of April 22, 2016 between Corning Incorporated and Shenzhen Xinhao Photoelectric Technology Co., Ltd.

6. Attached hereto as **Exhibit C** is a true and correct copy of the First Amendment to the General Commercial Framework Agreement, entered into as of March 9, 2017 between Corning Incorporated and Shenzhen Xinhao Photoelectric Technology Co., Ltd.

I, Calvin E. Wingfield Jr., hereby declare, under penalty of perjury and the laws of the United States of America, that the foregoing Declaration is true and correct.

Dated: March 12, 2019                                                          */s/Calvin E. Wingfield Jr.*
                                                                                              Calvin E. Wingfield Jr.

# EXHIBIT A

# Redacted In Its Entirety

# EXHIBIT B



*Execution Copy*
*April 21, 2016*

# General Commercial Framework Agreement

This General Commercial Framework Agreement (the "Agreement") is entered into as of April 22, 2016 (the "Effective Date") by and between Corning Incorporated, a corporation organized under the laws of the State of New York having its executive offices at One Riverfront Plaza, Corning, New York, on behalf of itself and its affiliates ("Corning"), and Shenzhen Xinhao Photoelectric Technology Co., Ltd., a corporation organized under the laws of Hong Kong having its executive offices at B Zone, 1st Floor 1st Building, No. 139 Furui Road Dayang Develop Zone, Fuyong Town, Baoan District, Shenzhen, China ("Finisher").

## Background

Corning manufactures, markets and sells Corning® Gorilla® glass, an optical quality glass optimized for display applications, including touch screen display ("Gorilla Glass"). Gorilla Glass is scratch resistant, durable and retains its optical characteristics after extended use. Gorilla Glass is manufactured using Corning's proprietary fusion draw technology which provides a smooth, pristine surface that does not require further polishing and enhances finishing operations. Gorilla Glass is used in portable electronic devices but has many potential applications where a ruggedized touch screen is desired.

Finisher has the capability to edge, cut and generally perform finishing services on glass products, including premium glass products such as Gorilla Glass.

Corning has discussed collaborating with Finisher to promote their combined capabilities to manufacturers of electronic products where strengthened glass is required, including manufacturers who produce such products or applicable subassemblies on a private-label or OEM basis, and to parties who themselves manufacture or engage others to manufacture for them on a private-label or OEM basis.

In consideration of the premises and the promises set forth below, Corning and Finisher agree as follows:

1.  Definitions. Certain capitalized terms not defined immediately prior to their first appearance in this Agreement shall have the following meaning ascribed to them:

    (a)   "Field" means medical imaging devices or consumer electronic devices, including but not limited to mobile phones, digital music players, personal digital assistants, computers, laptops, netbooks, and other electronic devices.

    (b)   "Prospective Customer(s)" means manufacturers of electronic products where strengthened glass is required, including manufacturers who produce such electronic products or applicable subassemblies on a private-label or OEM basis, and to parties who themselves manufacture or engage others to manufacture for them on a private-label or OEM basis.

*Execution Copy*
*April 21, 2016*

(c) "Corning Know-How" means know-how, processes, formulae, and other teachings owned, developed or licensed by Corning that may be used to perform certain services required to provide a finished glass product.

(d) "Improved Impact Resistance Technology" shall mean Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, to improve component level impact resistance. This includes, but is not limited to the technology and information which is disclosed in ████████████████████ and any other issued U.S. or Foreign Patent or filed Patent Application directly or indirectly claiming or entitled to claim the benefit of priority from such patent, application, or a divisional, continuation, continuation-in-part, reissue, reexamination, substitute or extension thereof.



(g) "Corning Technology" means Corning Know-How, Improved Impact Resistance Technology, ████████████████████ For the avoidance of doubt, the Corning Know-How which Corning discloses or otherwise makes available to Finisher, either prior to or during the Term of this Agreement shall be documented in Appendix A hereto. Further, as New Corning Technology is identified, it shall be added to Appendix A as well, if it is transferred to Finisher. Prior to any Corning Technology or New Corning Technology being transferred to Finisher, both Parties must agree to the proposed transfer of the technology, and the technology must be documented and added to Appendix A, as agreed to by both Parties. Each such updated version of Appendix A shall be incorporated herein by reference without need for formal amendment of this Agreement.

*Execution Copy*
*April 21, 2016*

(h)  "New Finisher Technology" means an invention, trade secret, know how, process, formulae, or teaching that is first invented, developed or conceived solely by personnel either employed or furnished by Finisher.

2. 

**Confidential – Filed Under Seal**

*Execution Copy*
*April 21, 2016*

3. <u>Limited License to Practice Corning Technology</u>.

(a) In connection with Corning's sale of Gorilla Glass to Finisher, Corning anticipates that it will transfer Corning Technology to Finisher to enable Finisher to perform the services requested of it or agreed to be performed by it for its Prospective Customers. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(b) In any event, any Corning Technology provided or otherwise disclosed to Finisher by Corning or any of its affiliates, shall be subject to the following:

   i. Corning Technology shall be owned solely and exclusively by Corning. Corning retains the ownership of all intellectual property and other proprietary rights in and to all Corning Technology. Nothing in this Agreement, other than as specifically set forth in this clause 3, grants any right or license under any Corning Technology to Finisher.

   ii. Corning Technology may only be practiced on Gorilla Glass purchased by Finisher from Corning.

   iii. Corning Technology shall be protected from further disclosure or misuse by Finisher in the same manner as it protects its own trade secrets, but in any event reasonable care must be taken to protect such technology from further disclosure or misuse.

   iv. Corning and its representatives shall have the right to audit and inspect Finisher's operations and security procedures to ensure that Finisher is using reasonably prudent and diligent efforts to protect Corning Technology from further disclosure and/or misuse.

   v. The limited license to use Corning's Technology may not be assigned, transferred, conveyed, or sub-licensed to any party by Finisher under any circumstances, even if Finisher undergoes a corporate change-in-control transaction such as (although not limited to) a merger or otherwise.

   vi. The limited license to use Corning's Technology is revocable by Corning at any time upon a breach or default by Finisher of any duty, liability, obligation, representation, or covenant assumed by it in this Agreement or an Addendum.

**Confidential – Filed Under Seal**

*Execution Copy*
*April 21, 2016*

4. ███████████████

   ███████████████████████████████████████
   ███████████████████████████████████████
   ███████████████████████████████████████

   ███████████████████████████████████████
   ███████████████████████████████████████

5. ████████████████████████

   

6. <u>Representations and Covenants</u>

   (a)   Finisher represents, warrants and covenants that it will not use any Corning Technology other than as permitted in clause 3(b) above.

   

*Execution Copy*
*April 21, 2016*

(c)   Finisher represents and warrants that it will use all reasonably prudent and diligent efforts to protect Corning Technology from unauthorized disclosure and/or misuse.

(d)   Any breach or threatened breach or alleged breach of a representation, warranty, or covenant provided in this clause 6 will not be adequately compensated by damages at law. Accordingly, the injured Party is entitled, in addition to all other remedies available, to equitable relief by injunction or otherwise to enforce its rights and require compliance by the breaching or defaulting Party with the representations, warranties and covenants assumed in this clause 6, without the necessity of proving that money damages alone would not provide adequate compensation and without the necessity of posting a bond. This clause 6 shall survive the expiration or termination of this Agreement for any reason whatsoever.

7.   Confidential Information. All information disclosed or otherwise made known to Finisher by Corning pursuant to this Agreement shall be deemed proprietary and confidential information belonging solely to Corning and may not be used or disclosed by Finisher for any purpose other than in fulfillment of Finisher's obligations owing to Corning under this Agreement and each written Addendum entered into hereunder. This obligation shall survive the expiration or earlier termination of this Agreement for any reason whatsoever in perpetuity.

8.   Term.

(a)   Unless earlier terminated in accordance with its terms, this Agreement shall remain valid and effective for a period of five (5) years from its Effective Date.

(b)   This Agreement may be terminated by written agreement of Corning and Finisher.

(c)   If Finisher breaches or defaults in the performance of any representation, warranty, covenant, agreement, duty or obligation provided or undertaken to be performed by it in this Agreement or any Addendum to this Agreement, Corning shall have the right to terminate this Agreement and/or one or more then-outstanding Addenda, as determined by Corning in its sole discretion, provided Finisher shall have thirty (30) calendar days to address and cure Corning's concerns to Corning's reasonable satisfaction.

(d)   Without limiting any other provision of this Agreement, this Agreement is terminable by Corning or Finisher without charge, cost, penalty or expense, if the other Party ceases to do business, elects to dissolve, dissolves, becomes insolvent, is unable to pay debts as they become due, makes a general assignment for the benefit of creditors, or, files, or has filed against it, a bankruptcy petition that is not dismissed within sixty (60) calendar days of its filing.

*Execution Copy*
*April 21, 2016*

(e)     Neither Party shall be liable or responsible to the other Party for any damages suffered or incurred, or owe an indemnification or obligation to the other, as a result of the expiration or earlier termination of this Agreement in accordance with its terms.  All remedies available as a result of a breach of any agreement, covenant, or representation contained in this Agreement shall survive termination of the Agreement. Corning not be liable or responsible to Finisher for any damages suffered or incurred, or owe an indemnification or obligation to Finisher, as a result of the failure of Corning and its affiliates to order sufficient production services from Finisher hereunder to enable Finisher to recoup the investment made by it or to realize the profits that it anticipated realizing.  Finisher has independently assessed the risks associated with its investment and determined that the risks associated with its prospective investment is manageable.

9.     <u>Confidential Nature of Agreement</u>.  Finisher acknowledges that this Agreement is deemed to be proprietary and confidential information belonging to Corning.  Finisher will not disclose this Agreement or the contents of any Addendum to any third party without Corning's prior written consent which it may grant or withhold at its sole discretion.

10.     <u>No Joint Venture</u>.  Finisher and Corning are separate and distinct entities, and this Agreement does not create a partnership, joint venture, or any common undertaking.

11.     <u>Severable Terms</u>.  If any term of this Agreement is held invalid or unenforceable, the remainder of this Agreement will not be affected and each other term will be valid to the extent permitted by law.

12.     <u>Survival</u>.  The following provisions of this Agreement are intended to survive the expiration or earlier termination of this Agreement: clause 1; clause 4; clause 5(a); clause 6; clause 8; clauses 9 – 16.

13.     <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding between Corning and Finisher with respect to its subject matter, and supersedes all prior and contemporaneous agreements, commitments, understandings, undertakings and representations with respect to the same.

14.     <u>Amendments</u>.  No modification, amendment, or alteration of this Agreement or any Addendum will be binding on Corning or Finisher unless executed in writing by an authorized representative of Corning and Finisher.

15.     <u>Waivers</u>.  No waiver of any of the provisions of this Agreement or any Addendum will be deemed a waiver of any other provision, or a continuing waiver.  No waiver will be binding unless executed in writing by the Party to be charged.

16.     <u>Governing Law & Dispute Resolution</u>.  The construction and performance of this Contract shall be in accordance with the law of the State of New York (apart from its conflict of laws principles).  All disputes, controversies or differences which may arise out of or relating to this Agreement, or the breach, termination or invalidity thereof, that



**Confidential – Filed Under Seal**

*Execution Copy*
*April 21, 2016*

the Parties are unable to resolve through good faith negotiation shall be exclusively and fin lly settled by litigation to be conducted exclusively before the U.S. Federal District Court located in the Western District of New York.

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of each Party by its duly authorized representative noted below.

**Corning Incorporated**

By: _JPBayJ_
Name: _John P. Bayne Jr_
Title: _VP & GM Gorilla® Glass_
Date: _5/5/16_

**Shenzhen Xinhao Photoelectric Technology Co., Ltd**

By: _[signature]_
Name: _[signature]_
Title: _Purchasing manager_
Date: _2016.4.22_

Appendix A ………….Corning Technology Disclosed



*Execution Copy*
*April 21, 2016*

## APPENDIX A

## CORNING TECHNOLOGY DISCLOSED TO FINISHER & NEW CORNING TECHNOLOGY

1. Corning technology including but not limited to the following:

- Process information and related know-how
- Process metrology and product metrology
- Equipment functional specifications
- Incoming material specifications
- Surface protection processes
- Engineering vendor recommendation(s)
- Equipment vendor recommendation(s)
- Key vendor and material supplier recommendations

Case 6:18-cv-06739-DGL   Document 16-1   Filed 03/12/19   Page 14 of 17

# EXHIBIT C



*Execution Copy*
*March 9, 2017*

## First Amendment to
## General Commercial Framework Agreement

This First Amendment ("First Amendment") is entered into effective March 9, 2017 (the "First Amendment Effective Date") by and between Corning Incorporated, on behalf of itself and its affiliates ("Corning"), and Shenzhen Xinhao Photoelectric Technology Co., Ltd. ("Finisher").

WHEREAS, Corning and Finisher entered into a General Commercial Framework Agreement dated effective April 22, 2016 (the "Agreement"), pursuant to which Corning and Finisher set forth their agreement concerning how they will interact in pursuing opportunities related to the use of Corning® Gorilla® Glass in electronic devices;

WHEREAS, Corning has developed intellectual property and technical know-how related to a new glass composition, collectively referred to herein as "Corning's Improved Component Level Impact Resistance/Drop Performance Technology";

WHEREAS, Finisher desires to accept Corning's support of Finisher's implementation of technology to produce articles made with Corning's Improved Component Level Impact Resistance/Drop Performance Technology consistent with the terms of this First Amendment and the Agreement; and,

WHEREAS, Corning and Finisher desire to extend the scope of the Agreement as set forth herein and to document their agreement and understanding regarding Corning's support of Finisher's implementation of technology to produce articles made with Corning's Improved Component Level Impact Resistance/Drop Performance Technology.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby recognized, the parties agree as follows:



1. The following definition is added to the Agreement under Section 1 as new subsection (f) and the remaining subsections are renumbered accordingly.

   (f) "Corning's Improved Component Level Impact Resistance/Drop Performance Technology" shall mean Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related glass articles which exhibit improved component level impact resistance/drop performance. This includes, but is not limited to the technology and information which is disclosed in U.S. Patent Application Nos. ███████████████████████████████████████ 62/266,411, filed on December 10, 2015 [Title: Fusion-Formable, Glass-Based Articles Including a Metal Oxide Concentration Gradient]; ███████████████████████████████████████████████████████████████████████████████████████████████████

**Confidential – Filed Under Seal**

*Execution Copy*
*March 9, 2017*

[REDACTED], and any other issued U.S. or Foreign Patent or filed Patent Application directly or indirectly claiming or entitled to claim the benefit of priority from such patent, or a divisional, continuation, continuation-in-part, reissue, reexamination, substitute or extension thereof.

2. <u>Transfer of Corning Technology</u>: Corning intends to transfer to Finisher certain Corning proprietary intellectual property, know-how, and engineering skills related to and including Corning's Improved Component Level Impact Resistance/Drop Performance Technology which shall be considered as included in "Corning Technology" as defined in the Agreement, and all terms in the Agreement applicable to Corning Technology shall apply to Corning's Improved Drop Resistance Technology. In all cases, Finisher may use Corning Technology only on glass supplied by Corning.  **The limited license to use Corning's Improved Component Level Impact Resistance/Drop Performance Technology, as set forth in this Amendment and further governed by the terms of the Agreement, is restricted further for use for the benefit of only such customers identified and approved in advance by Corning. Use or disclosure of Corning's Improved Component Level Impact Resistance/Drop Performance Technology to a customer or third party not approved by Corning will be deemed a material breach of this Agreement.**



3. The following new subsections (b) and (c) is added to the Agreement under Section 7, Confidential Information:

    b. Finisher agrees that the unauthorized disclosure of any information disclosed or otherwise made known to Finisher by Corning pursuant to this Agreement, including but not limited to the transfer and licensing of technology and know-how under Section 4 of this Agreement, is a material breach of the Agreement and damages to Corning will be difficult to determine. [REDACTED]



    c. Finisher agrees to allow Corning and/or a third party designated by Corning, subject to appropriate confidentiality agreements with Finisher and Corning, to





*Execution Copy*
*March 9, 2017*

verify that Finisher is in compliance with this Section 8, Confidential Information, and with the terms and conditions of the Agreement.

4. 

IN WITNESS WHEREOF, this Amendment has been executed for and on behalf of each Party by its duly authorized representative noted below.

| Corning Incorporated | Shenzhen Xinhao Photoelectric Technology Co., Ltd. |
|---|---|
| By: *John D. Duke* | By: |
| Name: John D. DUKE | Name: |
| Title: Division Vice-President | Title: |
| Date: March 20, 2017 | Date: |

**Confidential – Filed Under Seal**