UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CORNING INCORPORATED.

                Plaintiff,

v.

SHENZHEN XINHAO PHOTOELECTRIC
TECHNOLOGY CO., LTD.,

                Defendant.

Civil Case No.: 18-cv-06739

JURY TRIAL DEMANDED

CONFIDENTIAL – FILED UNDER SEAL

### DEFENDANT SHENZHEN XINHAO PHOTOELECTRIC TECHNOLOGY CO., LTD'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

William G. Bauer
WOODS OVIATT GILMAN LLP
Crossroads Building
2 State Street
Rochester, New York 14614
(585) 987-2800
wbauer@woodsoviatt.com

OF COUNSEL:
Mark J. Abate
Calvin E. Wingfield
James P. Breen
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
MAbate@goodwinlaw.com
CWingfield@goodwinlaw.com
JamesBreen@goodwinlaw.com

*Attorneys for Defendant Shenzhen Xinhao Photoelectric Technology Co., Ltd.*

**Confidential – Filed Under Seal**

# Table Of Contents

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 2

    A. The General Commercial Framework Agreement Defines "Corning Technology" to Refer To Know-How, Processes and Formulae, Not Products ............................................................................................................................. 2

    B. The Agreement Allows Corning to Ensure that Xinhao Exercises "Reasonably Prudent and Diligent Efforts to Protect Corning Technology from Further Disclosure and/or Misuse" ........................................................................ 6

    C. Corning's Breach of Contract Allegations ............................................................ 6

III. LEGAL STANDARDS ....................................................................................................... 8

IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ................................ 10

    A. The Court Should Dismiss Corning's Complaint Because the Complaint Failed to Set Forth Any Factual Allegations that Xinhao Necessarily Used Corning Technology to Make Non-Corning Glass .............................................. 10

        1. The Term "Corning Technology" Refers to Methods for Making a Glass Article with Improved Properties, Not the Glass Article Itself ...... 10

        2. Corning's Allegations About Its Patents Fail to Support Its Breach of Contract Claim ............................................................................................ 12

        3. Corning Failed to Allege Any Facts Showing that Xinhao Necessarily Has Used Corning Technology to Finish Non-Corning Glass ........................................................................................................... 13

    B. Count II of Corning's Complaint Should Be Dismissed Because Corning's Audit Request Exceeds What the Agreement Permits ....................................... 14

V. CONCLUSION .................................................................................................................. 16

**Confidential – Filed Under Seal**

# Table Of Authorities

**Cases**                                                           **Page(s)**

*AEI Life LLC v. Lincoln Benefit Life Co.*,
   892 F.3d 126 (2d Cir. 2018) ................................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 2, 8, 9, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 2

*First Serv. Fin. Inc. v. City Lights at Queens Landing, Inc.*,
   2009 WL 750190 (S.D.N.Y. Mar. 20, 2009) ........................................................ 9

*Panduit Corp. v. Corning Inc.*,
   2019 WL 189817 (E.D.N.C. Jan. 14, 2019) ................................................... 9, 14

*SRI Int'l Inc. v. Internet Sec. Sys., Inc.*,
   647 F. Supp. 2d 323 (D. Del. 2009) ..................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2, 8

**Confidential – Filed Under Seal**

I. **INTRODUCTION**

Plaintiff Corning Incorporated ("Corning") alleges Defendant Shenzhen Xinhao Photoelectric Technology Co., Ltd. ("Xinhao") breached the parties' General Commercial Framework Agreement[1] by purportedly (1) misusing "Corning Technology," as defined in the Agreement, to prepare glass for a third party and (2) failing to allow Corning to inspect and audit Xinhao's facilities. But those claims are based on threadbare allegations, faulty logic, and misinterpretations of the Agreement.

First, Corning pled insufficient, threadbare allegations that Xinhao has misused Corning's technology. Corning pled no factual allegations about the process(es) Xinhao actually uses to prepare glass for third parties. Rather, Corning pled allegations from which it would have the Court infer that Xinhao has misused its technology. But Corning's logic is flawed. Corning alleges that it tested glass Xinhao prepared for a third party (Vivo) that purportedly shows that the glass is a "glass-based article" with certain properties recited in a Corning patent claim (D.I. 1 at ¶ 10), but the Agreement defines "Corning Technology" in terms of trade secrets, know-how, processes, formulae, and other teachings used to **manufacture** glass with certain properties. (Ex. B[2] ▬▬▬▬ (emphasis added).) Nowhere is "Corning Technology" defined in terms of a glass-based article having certain properties. And Corning failed to allege that using Corning's know-how, processes, formulae, or other teachings is the only way to produce glass with the properties recited in the Corning patent claims. Nor did it allege any facts from which that conclusion could be reasonably inferred. For example, Corning failed to plead any facts suggesting that any property recited in the patent claim is unique to glass made using

---

[1] The parties entered the original agreement on April 22, 2016 (Ex. B) and executed the First Amendment to the Agreement on March 9, 2017. (Ex. C). The original agreement and First Amendment are referred to herein collectively as the "Agreement."
[2] "Ex. __" cites are citations to the Declaration of Calvin E. Wingfield Jr. filed in support of this motion.

the Corning Technology.  Thus, Corning's threadbare allegations about its patent and testing of third-party glass prepared by Xinhao fail to state a claim for breach of contract.

Second, Corning insufficiently pled allegations to support its breach of contract claim based on the Agreement's audit provision.  Corning's allegations imply that the Agreement grants Corning free rein to audit and inspect Xinhao facilities, including inspection of Xinhao's work for third parties, for misuse or unauthorized disclosure of Corning Technology.  It does not.  The Agreement allows Corning to "audit and inspect" whether Xinhao satisfactorily adopted and implemented steps to prevent "misuse and/or unauthorized disclosure of Corning Technology": "Corning and its representatives shall have the right to audit and inspect [Xinhao's] operations and security procedures to ensure that Finisher [(i.e., Xinhao)] is using reasonably prudent and diligent efforts to protect Corning Technology from further disclosure and/or misuse." (Ex. B at § 3(b)(iv).)  Because Corning sought a much broader inspection than permitted by the Agreement, it has failed to allege any factual allegations supporting its breach of contract theory based on the Agreement's audit provision.

For these reasons and those explained below, the Complaint fails to meet the notice pleading requirements of Federal Rule of Civil Procedure 8(a) and applicable Supreme Court precedent in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Therefore, Xinhao respectfully requests that the Court dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## II. STATEMENT OF FACTS

### A. The General Commercial Framework Agreement Defines "Corning Technology" to Refer To Know-How, Processes and Formulae, Not Products

On April 22, 2016, Corning and Xinhao entered into the General Commercial Framework Agreement.  (Ex. B at 1.)  Under the Agreement, Xinhao agreed to perform finishing services

**Confidential – Filed Under Seal**

using Corning Technology to strengthen glass sold by Corning and known as Gorilla Glass. (*Id.*) Xinhao also agreed that Corning Technology would "only be practiced on Gorilla Glass purchased by [Xinhao] from Corning." (*Id.* at § 3(b)(ii).)

The Agreement defines the term "Corning Technology" through a series of other defined terms—all of which use the common refrain of "know-how, processes, formulae, and other teachings" related to processing/finishing glass: "Corning Technology: Corning Know-How, Improved Impact Resistance Technology, ████████████████████ ████████████████████" (*Id.* at § 1(g).)  For example, the Agreement defines "Corning Know-How"—the first term embedded in the definition of "Corning Technology"—as "**know-how, processes, formulae, and other teachings** owned, developed or licensed by Corning that may be used to perform certain services required to provide a finished glass product." (*Id.* at § 1(c) (emphasis added).)

Similarly, the Agreement defines "Improved Impact Resistance Technology" and "████ ████████████████████" in terms of "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings," to "improve component level impact resistance" and "to produce thin strengthened glass articles," respectively:

> **Improved Impact Resistance Technology:** Corning's proprietary technology, **including trade secrets, know-how, processes, formulae, and other teachings**, to improve component level impact resistance. This includes, but is not limited to the technology and information which is disclosed in  and any other

**Confidential – Filed Under Seal**

>  issued U.S. or Foreign Patent or filed Patent Application directly or indirectly claiming or entitled to claim the benefit of priority from such patent, application, or a divisional, continuation, continuation-in-part, reissue, reexamination, substitute, or extension thereof.



(*Id.* at § 1(d)–(e) (emphases added).)  Lastly, the Agreement defines



When the Agreement was entered, Corning had a number of patents and pending patent applications related to strengthened glass.  The Agreement, however, never defines "Corning Technology" in terms of a product or glass-based article that practices or embodies any inventions claimed in those patents or applications.  Instead, the Agreement includes within the definition of Corning Technology only "the technology and information which is disclosed in" ▮▮▮▮▮.  For example, as shown above, the Agreement defines "Improved Impact Resistance Technology" to "include[] . . . the technology and information

which is disclosed in" identified Corning patent applications and patents.  (*Id.* at § 1(d).)  The same is true for the definition of "███████████████████████████████████████ ███.)  Thus, Corning Technology does not include glass-based articles that embody or practice the claims.

The parties amended the Agreement to add a new term, "Corning's Improved Component Level Impact Resistance/Drop Performance Technology" within the scope of the umbrella term "Corning Technology."  (Ex. C at § 1(f).)  The amendment defines that new term using the same common refrain about Corning's know-how, processes, formulae, and other teachings: "Corning's Improved Component Level Impact Resistance/Drop Performance Technology: Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related [sic; to] glass articles which exhibit improved component level impact resistance/drop performance."  (*Id.* at § 2.)  In the Complaint, Corning acknowledges that the definition of the new term, as written in the amendment, contained a typo and encompasses only Corning's know-how, processes, formulae and other teachings related to glass articles, and not the glass articles themselves, quoting the definition as follows:  "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related [to] glass articles which exhibit improved component level impact resistance/drop performance."  (D.I. 1 at ¶ 60 (quoting Ex. C at §§ 1(f), 2; Ex. B at §§ 1(g), 3).)  Just as in the original agreement, the amendment also included in the definition "technology and information which is disclosed in" certain Corning patent applications.  (Ex. C at § 1(f).)

Other paragraphs of the Complaint acknowledge that the Agreement defines Corning Technology in terms of know-how, processes, formulae, and other teachings—and not glass-based articles or products.  For example, the Complaint states that "Corning agreed to teach

**Confidential – Filed Under Seal**

Xinhao its proprietary technologies—which are defined in the agreement as "Corning Technology"—so that Xinhao **could use those** technologies to finish Corning Gorilla Glass." (D.I. 1 at ¶ 34 (emphasis added).) The Complaint also states "Corning transferred its 'GG5 ion exchange and metrology **processes**' to Xinhao" (*id.* at ¶ 46 (emphasis added)) and "[t]he trade secrets and technology that Corning disclosed to Xinhao **for use in finishing** Gorilla Glass 5 are covered under the definition of 'Corning Technology' in the Agreement." (*id.* at ¶ 51 (emphasis added).) All of these examples show that "Corning Technology" is limited to processes **used to manufacture or finish** glass, and does not extend to the glass-based articles themselves.

     **B.**     **The Agreement Allows Corning to Ensure that Xinhao Exercises "Reasonably Prudent and Diligent Efforts to Protect Corning Technology from Further Disclosure and/or Misuse"**

The Agreement also required Xinhao to maintain the proprietary and confidential nature of the Corning Technology. Xinhao agreed to protect the "Corning Technology . . . from further disclosure or misuse . . . in the same manner as it protects its own trade secrets, but in any event . . . [to exercise] reasonable care . . . to protect such technology from further disclosure or misuse." (Ex. B at § 3(b)(iii).) And Xinhao agreed that "Corning and its representatives shall have the right to audit and inspect [Xinhao]'s operations and security procedures to ensure it is using **reasonably prudent and diligent efforts** to protect Corning Technology from further disclosure and/or misuse." (*Id.* at § 3(b)(iv) (emphasis added).) The Agreement does not grant Corning free rein to audit and inspect Xinhao's facility.

     **C.**     **Corning's Breach of Contract Allegations**

On October 15, 2018, Corning filed the Complaint alleging that Xinhao breached the Agreement in two ways. (D.I. 1 at 24–28.) First, Corning alleges that Xinhao breached the Agreement by misusing Corning Technology to finish non-Corning cover glass. (*Id.* at ¶ 71.) Second, Corning alleges that Xinhao breached the Agreement by refusing Corning's request to

audit and inspect Xinhao's operations and security procedures for further misuse and/or unauthorized disclosure of Corning Technology. (*Id.* at ¶ 76.)

Corning's first breach of contract theory relies on testing of non-Corning glass used in Vivo Smartphones that purportedly "indicate that Xinhao has furnished non-Corning cover glass using Corning Technology in at least two respects." (*Id.* at ¶ 56.) Corning alleges that the non-Corning glass uses Corning Technology described in "multiple Corning patents"—U.S. Patent No. 9,908,811 B2 ("US '811 patent") and China Utility Model Patent No. CN206986034 ("CN '034 patent")—"whose disclosures are included within the definition of Corning Technology under the Agreement." (*See id.* at ¶¶ 57–59.) Corning also alleges that the glass tested "has stress profile and performance characteristics that match those obtained from finishing cover glass with Corning Technology." (*Id.* at ¶ 60.) And Corning alleges that "Xinhao is using Corning Technology to increase its efficiency and yield in finishing non-Corning cover glass." (*Id.*)

Corning's *factual* allegations, however, do not support those conclusions. For example, Corning alleges that testing it conducted on cover glass for Vivo smartphones "indicate that Xinhao has finished non-Corning glass using Corning Technology" because purportedly "[t]he Xinhao-finished non-Corning glass in the Vivo Y83 and Y85 smartphones meets each of the requirements of" claim 1 of Corning's US '811 patent and claim 2 of its CN '035 patent. But Corning failed to plead facts identifying the testing it conducted or the actual test results. Corning also failed to plead factual allegations about the processes or methods Xinhao allegedly employed to prepare the Vivo cover glass or that using Corning Technology (*i.e.*, Corning's know-how, processes, formulae, or other teachings) is the ***only way*** to produce glass having the stress profile and performance characteristics recited in its patent claims. Nor did Corning allege

that any property recited in its patent claims is a unique marker or identifier of Corning Technology.  Thus, Corning's threadbare allegations are insufficient to support its claim that Xinhao has misused the Corning Technology.

Corning also alleged that Xinhao breached the Agreement's audit provision by refusing to allow Corning "to audit and inspect Xinhao's operations and security procedures for further misuse and/or unauthorized disclosure of Corning Technology." (*Id.* at ¶ 76.)  But the Agreement grants "Corning and its representatives . . . the right to audit and inspect [Xinhao's] operations and security procedures **to ensure it is using reasonably prudent** and **diligent efforts** to protect Corning Technology from further disclosure and/or misuse." (Ex. B at § 3(b)(iv) (emphasis added).)  The Agreement does not grant Corning free rein to conduct the "███████████" it requested in its Notice Letter to Xinhao. (Ex. A; Ex. B)  Because Xinhao had no obligation to allow Corning's "███████████" of its facilities, Xinhao has not breached the Agreement's "audit and inspection" provision.

### III. LEGAL STANDARDS

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).)  Although a court must accept as true all factual allegations contained in a complaint, that requirement does not apply to legal conclusions. (*Id.* at 678–79.)  The pleadings must include non-conclusory factual allegations to support the legal claims asserted. (*Id.*) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id.* at 678 (citing *Twombly*, 550 U.S. at 555).)

**Confidential – Filed Under Seal**

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).) Whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (*Iqbal*, 556 U.S. at 679.)

"Where there is no ambiguity to a contract and 'the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law,' and a claim turning on that interpretation may be resolved on a motion to dismiss." (*First Serv. Fin. Inc. v. City Lights at Queens Landing, Inc.*, 2009 WL 750190, at *2 (S.D.N.Y. Mar. 20, 2009) (internal citations omitted.)) "Ambiguity exists when a material contract term or clause is susceptible of 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" (*Id*. (internal citations omitted).)

Accusations that test results are consistent with the use of a particular method, without *factual* allegations that the particular "method is the only way in which to produce a [result]" are insufficient to overcome a motion to dismiss. (*Panduit Corp. v. Corning Inc.*, 2019 WL 189817, at *4 (E.D.N.C. Jan. 14, 2019).) While circumstantial evidence may be used to demonstrate patent infringement, the evidence must still indicate that infringement actually occurred. That is, a patentee must "either point to specific instances of direct infringement or show that the accused device **necessarily** infringes the patent in suit." (*SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 647 F.

**Confidential – Filed Under Seal**

Supp. 2d 323, 336 (D. Del. 2009) (quoting *ACCO Brands v. ABA Locks Manuf. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)) (emphasis added).)

### IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

#### A. The Court Should Dismiss Corning's Complaint Because the Complaint Failed to Set Forth Any Factual Allegations that Xinhao Necessarily Used Corning Technology to Make Non-Corning Glass

The Agreement limits "Corning Technology" to Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings used to make glass with improved properties. Corning Technology does not extend to glass articles themselves, regardless of how they are made, and regardless of whether they contain properties consistent with those recited in Corning's patent claims. Corning did not plead *factual* allegations that permit a reasonable inference that glass-based articles exhibiting the properties recited in Corning's patent claims **necessarily** were made using Corning Technology (*i.e.*, Corning's trade secrets, know-how, processes, formulae and other teachings). Thus, Corning has failed to allege *facts* sufficient to support its claim that Xinhao has misused Corning Technology. The Court therefore should dismiss Count I of the Complaint

#### 1. The Term "Corning Technology" Refers to Methods for Making a Glass Article with Improved Properties, Not the Glass Article Itself

The Agreement defines "Corning Technology" through other defined terms: "Corning Know-How, Improved Impact Resistance Technology, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, as defined above." (Ex. B at 2.) The Agreement in turn defines each of those terms using the common refrain "know-how, processes, formulae, and other teachings" to strengthen glass. (*Id.* at §§ 1(c)–(f).) In addition to the definitions, the Agreement's use of the term "Corning Technology" when discussing the parties' respective obligations shows that it refers to know-how, processes, formulae, and other teachings—and not glass-based articles or products. The Agreement states that Xinhao "has the capability to edge,

**Confidential – Filed Under Seal**

cut and generally **perform** finishing services." (*Id.* at 1 (emphasis added).) The Agreement also states that Corning granted Xinhao a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) and that Corning will transfer "Corning Technology to [Xinhao] to enable [Xinhao] **to perform** the services requested." (*Id.* at 4.) And a section of the Agreement discusses a "Limited License to **Practice** Corning Technology." (*Id.* at 4.) Thus, when Xinhao and Corning entered the Agreement, it was clear that "Corning Technology" referred to methods or processes, not the resulting articles of manufacture. The Court should interpret the term "Corning Technology" consistent with that understanding. (*AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) ("Under New York law . . . contracts should be interpreted so as to effectuate the parties' intent.") (internal citations omitted).)

Further, the Complaint consistently refers to Corning Technology as **processes** or **actions** Xinhao would **perform to make and finish** Corning's glass. For example, it states that "Corning agreed to teach Xinhao its proprietary technologies—which are defined in the agreement as 'Corning Technology'—so that Xinhao **could use those** technologies to finish Corning Gorilla Glass." (D.I. 1 at ¶ 34 (emphasis added).) Additionally, the Complaint states "Corning transferred its 'GG5 ion exchange and metrology **processes**' to Xinhao" (*id.* at ¶ 46 (emphasis added)) and that "[t]he trade secrets and technology that Corning disclosed to Xinhao **for use in finishing** Gorilla Glass 5 are covered under the definition of 'Corning Technology' in the Agreement." (*id.* at ¶ 51 (emphasis added).)

Thus, both the Agreement and Corning's allegations indicate that Corning Technology refers to methods or processes for doing something—not a glass-based article or product.

{7099540: }                                       11

### 2.     Corning's Allegations About Its Patents Fail to Support Its Breach of Contract Claim

Corning's allegations about its patents are not relevant and fail to support its breach of contract claim based on Xinhao's alleged misuse of Corning Technology.  Corning alleges that "patented Corning Technology that Corning shared with Xinhao is covered under the definition of 'Corning Technology' in the Agreement." (D.I. 1 at ¶ 52 (citing Ex. C at § 1(f).)  But that allegation misrepresents the unambiguous scope of the Agreement.  Section 1(f) of the parties' amendment to the Agreement, on which Corning relies, defines the term "Corning's Improved Component Level Impact Resistance/Drop Performance Technology" as "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related [to][3] glass articles which exhibit improved component level impact resistance/drop performance."  (Ex. C at § 1(f).)  Pursuant to Section 1(f), the definition "includes, but is not limited to the **technology and information which is disclosed**" in certain Corning patents and patent applications.  (*Id.* (emphasis added).)  Section 1(f) in no way expands the definition of "Corning Technology" to include glass-based articles or products that embody or practice Corning patent claims directed to glass articles having certain properties.

The very next clause of the Amendment affirms that the definition in Section 1(f) does not include glass-based articles or products that embody or practice Corning patent claims directed to glass articles having certain properties.  It states "[i]n all cases, [Xinhao] **may use** Corning Technology only on glass supplied by Corning."   (Ex. C at 2 (emphasis added).)  Xinhao could not **use** a glass-based article or product on glass supplied by Corning.

Corning also alleges that, based on testing it conducted, Vivo cover glass "meets each of the requirements of" claims from two Corning patents.  But whether that is true is not pertinent

---

[3] As explained above, Corning recognizes that this is the correct reading of Section 1(f) of the amendment.  (*Supra* II.A.)

**Confidential – Filed Under Seal**

to Corning's breach of contract claim because the Agreement is directed to technology used to make glass-based articles, not the articles themselves, regardless of their properties or whether they would infringe a Corning patent claim. Moreover, breach of contract and patent infringement are two separate causes of action; and Corning did not plead patent infringement.

### 3. Corning Failed to Allege Any Facts Showing that Xinhao *Necessarily* Has Used Corning Technology to Finish Non-Corning Glass

Corning did not allege any facts that would permit a reasonable inference that Xinhao necessarily used Corning Technology to finish non-Corning glass. Corning alleges that tests performed on Vivo smartphones "indicate that Xinhao has finished non-Corning cover glass using Corning Technology in at least two respects." (D.I. 1 at ¶ 56.) Corning conclusorily alleges that the glass tested from Vivo smart phones "indicates that it was finished us[ing] Corning Technology" because it allegedly has the improved properties of the glass claimed in Corning's patents. (D.I. 1 ¶ 60.) But Corning Technology refers only to methods and processes to make strengthened or impact-resistant glass, not the glass-based articles themselves.

Corning offers no factual allegations as to why glass that "has stress profiles and performance characteristics that match those obtained from finishing cover glass with Corning Technology" **necessarily** means that the glass was finished with Corning Technology. (D.I. 1 at ¶ 60.) Corning attempts to rely on an inference of patent infringement (*infra* IV.A.2.), but even in that context its allegations are insufficient. Corning relies on conclusory allegations that its undisclosed testing purportedly indicates that the Vivo glass meets requirements of two Corning patent claims. Corning neither alleged that any method or process disclosed in its patents or that Corning provided to Xinhao is the only way to make the glass-based articles recited in its patent claims nor that the properties recited in its patent claims are unique identifiers or markers for Corning Technology. Conclusory allegations of this sort are insufficient to overcome a motion

to dismiss a claim for patent infringement.[4]   (*Panduit Corp.*, 2019 WL 189817, at *4.) Accordingly, this Court should dismiss Corning's threadbare claim that Xinhao has misused Corning Technology because the Complaint contains no *factual* allegations to support it.

Indeed, in pre-suit correspondence, Corning stated,



### B.   Count II of Corning's Complaint Should Be Dismissed Because Corning's Audit Request Exceeds What the Agreement Permits.

Corning also failed to adequately plead breach of contract based on the Agreement's audit provision.  The Agreement states that Xinhao " shall protect[] [Corning Technology] from further disclosure or misuse . . . in the same manner as it protects its own trade secrets, but in any event reasonable care must be taken to protect such technology from further disclosure or

---

[4] Courts analyze patent-infringement allegations using the same *Twombly/Iqbal* standard as breach of contract allegations. (*See Panduit Corp.*, 2019 WL 189817, at *3 ("To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citation marks omitted).)

{7099540: }                                      14

misuse." (Ex. B at § 3(b)(iii).)  The audit provision states, "Corning and its representatives shall have the right to audit and inspect [Xinhao]'s operations and security procedures to ensure that Finisher is using **reasonably prudent and diligent efforts** to protect Corning Technology from further disclosure and/or misuse." (*Id.* at § 3(b)(iv) (emphasis added).)  The audit provision does not grant Corning free rein to inspect Xinhao's facilities, as Corning's allegations imply.  (*Id.*)  Rather, it limits Corning's rights to auditing and inspecting Xinhao's "operations and security procedures" to ensure that Xinhao is using "reasonably prudent and diligent efforts" to protect Corning Technology.  (*Id.*)  That includes ensuring that Xinhao has implemented proper protocols to protect Corning Technology, such as video surveillance, restricted access for authorized personnel only to areas where Xinhao uses or stores Corning Technology, and password protection for access to electronic files about Corning Technology.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Xinhao has never refused to allow Corning to audit Xinhao's efforts it has taken (operations and security procedures) to protect Corning Technology, and therefore has not breached the Agreement.

Because Corning's "▮▮▮▮▮▮▮▮" request far exceeded the scope of inspection permitted by the Agreement, Xinhao's refusal to allow the requested inspection does not support Corning's claim for breach of contract.  Thus, the Court should dismiss Count II of Corning's Complaint for failure to state a claim for breach of contract.

**Confidential – Filed Under Seal**

## V. CONCLUSION

For the foregoing reasons, Xinhao respectfully requests that the Court dismiss with prejudice Counts I and II of the Complaint.

Dated: March 12, 2019

                                        Respectfully submitted,

| OF COUNSEL: | By:    s/: William G. Bauer |
|---|---|
| Mark J. Abate | William G. Bauer |
| Calvin E. Wingfield | WOODS OVIATT GILMAN LLP |
| James P. Breen | Crossroads Building |
| **GOODWIN PROCTER LLP** | 2 State Street |
| The New York Times Building | Rochester, New York 14614 |
| 620 Eighth Avenue | (585) 987-2800 |
| New York, NY 10018 | wbauer@woodsoviatt.com |
| MAbate@goodwinlaw.com | |
| CWingfield@goodwinlaw.com | |
| JamesBreen@goodwinlaw.com | |