UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
————————————————————————————

CORNING INCORPORATED,

                              Plaintiff,

            v.

SHENZHEN XINHAO PHOTOELECTRIC
TECHNOLOGY CO., LTD.,

                              Defendant.
————————————————————————————

DECISION AND ORDER

18-CV-6739L

        Plaintiff Corning Incorporated ("Corning") brings this action against defendant Shenzhen

Xinhao Photoelectric Technology Co., Ltd. ("Xinhao").  Plaintiff asserts two causes of action,

both of which allege that Xinhao has breached the terms of a contract between Corning and

Xinhao relating to Xinhao's "finishing" of certain glass products manufactured by Corning.

Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.

        Xinhao has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  For the reasons that follow, the motion is denied.


                              **FACTUAL BACKGROUND**

        According to the complaint, the allegations of which are accepted as true for purposes of

Xinhao's motion, Corning is a New York corporation with its principal place of business in

Corning, New York.  Xinhao is a Chinese corporation with its principal place of business in

Shenzhen, China.  Complaint ¶¶ 15, 16.

In 2007, Corning, a leading manufacturer of glass products, developed a "cover glass" for use with mobile electronic devices such as smartphones and tablets.  Corning's product, which it markets under the name "Gorilla Glass," is "exceptionally durable, thin, lightweight, scratch resistant, [and] impact resistant ... ."  Gorilla Glass has now been used in over six billion devices worldwide.  Complaint ¶¶ 3, 4.

To create Gorilla Glass, Corning first manufactures sheets of glass, which it sends to outside companies for "finishing," a process that further strengthens the glass.  To enable the "finishers" to accomplish the desired result, Corning shares its proprietary technology with them, subject to strict confidentiality requirements and restrictions.

Effective April 22, 2016, Corning and Xinhao entered into a General Commercial Framework Agreement ("CFA"), for Xinhao to finish Gorilla Glass.  The CFA included restrictions on Xinhao's use of specifically defined "Corning Technology" that Corning agreed to disclose to Xinhao.  Effective March 9, 2017, Corning and Xinhao entered into a "First Amendment" to the CFA, which in part related to the definition of Corning Technology.  *Id.* ¶¶ 8, 9.  The CFA and First Amendment will be collectively referred to herein as the "Agreement."

Under the terms of the Agreement, Xinhao agreed that it would keep the disclosed Corning Technology confidential, and would only use it to finish Gorilla Glass.  Corning alleges, however, that after entering into the Agreement, it found reason to believe that Xinhao was using Corning Technology in violation of the Agreement to finish and produce glass products made from glass that was not supplied by Corning.  *Id.* ¶ 10.  Specifically, Corning alleges that at least as early as the spring of 2018, Xinhao began using Corning Technology to finish non-Corning cover glass in mobile devices, including Vivo smartphones.  *Id.* ¶ 53.

Corning alleges that it has purchased commercially available Vivo smartphones, and after testing their cover glass, determined that the phones' cover glass–which was not manufactured by Corning–was finished by Xinhao using Corning Technology. *Id.* ¶ 56. Corning alleges that the Vivo phones' cover glass has been finished using Corning Technology in at least two respects.

First, the non-Corning, Xinhao-finished cover glass uses Corning Technoloy described in Corning patents, the disclosures of which are included within the Agreement's definition of "Corning Technology." Corning alleges that the non-Corning glass in the tested Vivo smartphones meets each of the requirements of certain claims of Corning's patents encompassed within the Agreement's definition of Corning Technology. *Id.* ¶¶ 58, 59.

Second, Corning's testing of the Vivo phones' glass indicates that it was finished by means of Corning Technology. Corning alleges that its testing shows that the glass displays certain characteristics that match those obtained from finishing cover glass using Corning Technology. *Id.* ¶ 60. In short, the complaint alleges that both the glass itself and its finishing were made or accomplished by means of Corning Technology.

Based on its belief that Xinhao was violating the Agreement, on August 15, 2018 Corning sent a "Notice Letter" to Xinhao, demanding that Xinhao "[i]mmediately cease making, using, or selling ... glasses that infringe the Corning Patents," and "[c]ooperate with Corning on a comprehensive audit as required by the CFA to determine if Corning's confidential and proprietary information is being used by Xinhao to produce non-Corning ... strengthened glasses." (Dkt. #19-3 at 5.) The demand for an audit was based on a provision in the CFA giving Corning "the right to audit and inspect [Xinhao's] operations and security procedures to

ensure that [Xinhao] is using reasonably prudent and diligent efforts to protect Corning

Technology from further disclosure and/or misuse." *Id.* at 10.

It is not apparent whether Xinhao ever formally responded to Corning's demand.  The

complaint states that "Xinhao refused Corning's requests," and that it has done so "[d]espite

multiple requests from Corning," but Corning also asserts in its motion papers that Xinhao has

"failed to respond" to Corning's audit requests.  Complaint ¶ 63; Pl. Mem. (Dkt. #21) at 12.

What *is* clear is that Corning has requested that it be allowed to audit Xinhao's operations, and

that Xinhao has not granted that request.

Corning filed the complaint in this action on October 15, 2018.  In the first cause of

action, Corning alleges that Xinhao has violated §§ 3(b) and 6(a) of the Agreement, in two ways.

First, Corning alleges that Xinhao has finished non-Corning cover glass using Corning

Technology, which Xinhao is prohibited from doing under the Agreement.  Section 3(b) provides

that "Corning Technology may only be practiced on Gorilla Glass purchased by [Xinhao] from

Corning."  Dkt. #19-3 at 10 § 3(b)(ii).  Section 6(a) states that Xinhao "represents, warrants and

covenants that it will not use any Corning Technology other than as permitted in clause 3(b) ... ."

*Id.* at 11.

Second, Corning alleges that, even apart from Xinhao's finishing of the non-Corning

cover glass, the glass itself uses Corning Technology that is included within the definition of

Corning Technology under the Agreement.  Corning contends that this also violates the

Agreement.

In the second cause of action, Corning alleges that "Xinhao has breached Section 3(b)(iv)

of the Agreement by refusing Corning's request in its August 15, 2018 Notice Letter to audit and

inspect Xinhao's operations and security procedures for further misuse and/or unauthorized

disclosure of Corning Technology."  Complaint ¶ 76.

For relief, Corning seeks:  a declaration from the Court that Xinhao has breached and is

breaching the Agreement; an order enjoining Xinhao from using or disclosing Corning

Technology in violation of the Agreement; money damages for Xinhao's breach of the

Agreement; restitution and/or disgorgement of all revenues and profits that Xinhao has received

as a result of its breaches of the Agreement; specific performance of the audit provision of the

Agreement, allowing Corning to conduct an audit of Xinhao's facilities; and an award of

litigation costs and attorney's fees.  Complaint at 27-28.


## DISCUSSION

### I. Motions to Dismiss–General Standards

In deciding a motion to dismiss a complaint for failure to state a claim upon which relief

can be granted, the court must accept all well-pleaded factual allegations in the complaint as true,

and draw all reasonable inferences in favor of the plaintiff.  *GE Investors v. General Elec. Co.*,

447 Fed.Appx. 229, 230 (2d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56

(2007)).

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the complaint must

allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at

570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (stating that a claim will have "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged").  A complaint "that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' ... [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 678).

Although *Twombly* makes clear that a plaintiff must allege more than just a "conceivable" basis for its claim, it is equally clear that the Supreme Court has not "imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence ... ." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010).  As stated in *Twombly*, Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  550 U.S. at 555 (other internal quotation marks omitted).

While a pleader must therefore present more than simply "labels and conclusions," it is not necessary at the pleading stage to set forth "detailed factual allegations."  The decisive question is whether the complaint's factual allegations are "enough to raise a right to relief above the speculative level," *i.e.*, enough to make the claim facially "plausible."  *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).  *See also Campanella v. County of Monroe*, 853 F.Supp.2d 364, 378 (W.D.N.Y. 2012) ("a plaintiff need not plead specific, admissible evidence

in support of a claim"); *Briggs v. Women in Need, Inc.*, 819 F.Supp.2d 119, 124-25 (E.D.N.Y.

2011) ("*Twombly* 'affirmed the vitality of *Swierkiewicz* [*v. Sorema*, 534 U.S. 506 (2002)], which

applied a notice pleading standard, and explained that its decision did not require heightened fact

pleading of specifics'") (quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 213 (2d Cir. 2008))

(additional internal quotation marks omitted).


## II. Breach of Contract

To make out a claim for breach of contract under New York law, the complaint must

allege facts which show:  "(1) the existence of an agreement, (2) adequate performance of the

contract by plaintiff, (3) breach of the contract by defendant, and (4) damages."  *Eternity Global

Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *accord

Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

"A sufficient pleading for breach of contract must, 'at a minimum, allege the terms of the

contract, each element of the alleged breach and the resultant damages in a plain and simple

fashion.'"  *Pangaea (H.K.) Ltd. v. Dynamax Imaging, LLC*, No. 15-CV-6686, 2016 WL

9582835, at *3 (W.D.N.Y. June 22, 2016) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779

F.Supp. 276, 286 (S.D.N.Y. 1991)); *accord Eternity Global Master Fund Ltd. v. Morgan Guar.

Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).  "Without pleading the terms of the contract

or contracts that [plaintiff] relies upon, [the plaintiff's] claim fails."  *Yanes v. Ocwen Loan

Servicing, LLC*, No. 13-cv-2343, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015).

As with other civil claims in general, however, that does not mean that a complaint

alleging breach of contract must allege detailed facts or plead evidence.  Contract claims must do

neither more nor less than is required by the Federal Rules, as interpreted by *Twombly* and *Iqbal*.

In other words, they must provide a "short and plain" statement of facts which, if true, would

entitle the plaintiff to relief.  *See Kaleida Health v. Medtronic Sofamor Danek USA, Inc.*, No.

05-CV-0675, 2006 U.S. Dist. LEXIS 92295, at *8 (S.D.N.Y. Dec. 21, 2006) ("All that is

required is a short and plain statement of the breach of contract claim that will give the defendant

fair notice of what the plaintiff's claim is and the grounds upon which it rests") (internal quotes

and citations omitted).  *See also In re Morgan Stanley Information Fund Securities Litigation*,

592 F.3d 347, 358 (2d Cir. 2010) ("notice pleading supported by facially plausible factual

allegations is all that is required–nothing more, nothing less") (citing *Iqbal*, 556 U.S. at 678).

A separate but related question involves contract interpretation.  The Agreement that is

the subject of Corning's claims is by its terms governed by New York law.  *See* Agreement § 16.

"Under New York law, issues of contract interpretation, including determining whether a

contract term is ambiguous, are threshold questions of law to be determined by the court and

suitable for disposition on a motion to dismiss."  *Citibank, N.A. v. Jacobsen*, No. 19-CV-959,

2020 WL 772497, at *9 (S.D.N.Y. Feb. 8, 2020) (citing *Citadel Equity Fund Ltd. v. Aquila, Inc.*,

371 F.Supp.2d 510, 516 (S.D.N.Y. 2005), *aff'd*, 168 Fed.Appx 474 (2d Cir. 2006)).  *See also*

*Orchard Hill Master Fund Ltd. v. SBA Comms. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

"Whether a contract is ambiguous is a question of law for the court to decide."  *Bayerische*

*Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012).

**III. Application to this Case**

    **A. Corning Technology**

In support of its motion, Xinhao contends that Corning's complaint fails to state a claim upon which relief can be granted, in several respects.  First, Xinhao argues that the complaint does not allege facts showing that Xinhao necessarily used Corning Technology to make or finish non-Corning glass.  Second, Xinhao contends that Corning's audit request exceeds what is permitted under the Agreement.

The first ground for Xinhao's motion (which relates primarily to the first cause of action) is largely based on its construction of the contractual term "Corning Technology."  In short, Xinhao asserts that "Corning Technology" refers to methods for making a glass article with certain properties, not to the glass article itself.

That might seem like a finely-drawn distinction, but according to Xinhao, it makes a great deal of difference.  Xinhao focuses on Corning's allegation that the Vivo glass it tested appears to meet the requirements of claims contained in two Corning patents.  That, Xinhao argues, is irrelevant, since the Agreement is directed to the technology used to produce glass-based articles, not to the articles themselves.  *See* Def. Mem. (Dkt. #19-1) at 12-13.

   In a similar vein, Xinhao argues that Corning has not alleged facts showing that Xinhao *necessarily* used Corning Technology to finish non-Corning glass.  Xinhao contends that Corning's allegations show only that Corning Technology *might* have been used to produce the tested glass.

In response, Corning asserts that under the terms of the Agreement, "Corning Technology" includes both technologies (such as techniques, processes, and software) directed to

the finishing of glass articles, and the attributes of the finished glass articles themselves, such as the structure and characteristics of glass articles developed by Corning that make them exceptionally strong and durable.  As Corning sees it, "Corning Technology," under the Agreement, is "not limited in any way to only 'methods and processes' for finishing glass articles."  Pl. Mem. (Dkt. #21) at 11.

Applying the pleading standards set forth above, I conclude that Corning has adequately stated a claim for breach of contract, based on Xinhao's alleged use of Corning Technology to finish non-Corning glass.  The reasons for the Court's conclusion are set forth in detail below. But to understand those reasons requires an analysis and understanding of the Agreement.

The Agreement provides that Corning will transfer Corning Technology to Xinhao, and that Xinhao may use Corning Technology, but only within specified parameters.  As particularly relevant to this action, "Corning Technology may only be practiced on Gorilla Glass purchased by [Xinhao] from Corning."  Xinhao also agreed that it would "not use any Corning Technology other than as permitted" in the Agreement.

"Corning Technology" is defined in the Agreement as "Corning Know-How, Improved Impact Resistance Technology," and other identified technologies.  CFA § 1(g).  Each of those terms is also defined in the Agreement, in sections 1(c) through 1(f).  Those definitions expressly include, *inter alia*, "technology and information" disclosed in certain patents and patent applications owned or filed by Corning.

The First Amendment to the Agreement was entered into in March 2017.  The amendment's stated purpose was to "extend the scope of the Agreement" to reflect the fact that Corning had "developed intellectual property and technical know-how related to a new glass

-10-

composition," referred to in the amendment as "Corning's Improved Component Level Impact Resistance/Drop Performance Technology" (for the sake of convenience, hereinafter referred to as "Improved Technology").  *See* Complaint Ex 2 (Dkt. # 1-2).  The First Amendment also states that Improved Technology "shall be considered as included in 'Corning Technology' as defined in the Agreement ... ."

The First Amendment added some additional provisions to the Agreement, including a new subsection (f) in section 1.[1]  That new subsection defines "Improved Technology" to "mean Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related glass articles which exhibit improved component level impact resistance/drop performance."  *Id.* at 1.  It goes on to say that "[t]his includes, but is not limited to the technology and information disclosed in" several enumerated patent applications, and collectively, any other filed patent applications or issued patents related to the listed patent applications.

The parties are in agreement that subsection (f), as written in the First Amendment, contains a typographical error.  The reference to "related glass articles" should read "related *to* glass articles."  *See* Def. Mem. (Dkt. #16-2) at 5; Pl. Mem. (Dkt. #21) at 12.  The parties disagree, however, on whether that has any significance, a matter which is discussed below.

---

[1] The remaining subsections in the Agreement were to be redesignated accordingly. Thus, the original section 1(f), which defined "New Corning Technology," became section 1(g), and so on.

**B. Xinhao's Motion**

     **1. "Making" Glass Articles**

With respect to the first cause of action, Xinhao presents several arguments, none of which I find persuasive.

To summarize defendant's argument, Xinhao asserts that "Corning Technology," as used in the Agreement, refers to methods for making a glass article with certain "improved" properties, not to the glass article itself.  In the complaint, Corning alleges that it has tested non-Corning (Vivo) products that have been finished by Xinhao, that display such properties. (Complaint ¶ 57.)  That, Xinhao argues, is not enough to state a claim against Xinhao.

That argument is flawed in several respects.  First, the Agreement defines "Corning Technology" as comprising several other terms (such as "Corning Know-How" and "Improved Impact Resistance Technology") that are separately defined in the Agreement.  Those terms, as defined in the Agreement, include "technology and information" disclosed in certain patents and patent applications owned or filed by Corning.

Those patents and patent applications in turn recite certain properties of glass articles displaying certain characteristics.  For example, Corning's "811" patent claims, *inter alia*, a "glass-based article comprising" certain elements and characteristics.  (Dkt. #1-3 at 79.) Although the 811 patent is not expressly referenced in the Agreement, it nonetheless falls within the ambit of the Agreement because it claims priority over Corning's "411" patent application, the disclosures of which are expressly encompassed within the "new" subsection 1(f) added to the Agreement in the First Amendment.  *See* Complaint Ex. 2 at 2, Ex. 3 at 43 col. 1.  By its

terms, the First Amendment also includes within the definition of Improved Technology any patent or patent application claiming priority over the 411 patent. *Id.*

Similarly, Corning's Chinese "034" patent (Dkt. #1-6), which also claims priority over the 411 application, claims a "glass-based article" comprising certain characteristics. *Id.* at 5. Thus, the Agreement itself contradicts Xinhao's assertion that the Agreement does not cover glass articles, but only methods for making glass articles.

Nor does the phrase in the First Amendment containing a typographical error call for a different conclusion. The parties agree that the amendment, as properly worded, added to the definition of "Corning Technology" trade secrets, know-how, etc., "related *to* glass articles" exhibiting certain characteristics, and that the original wording, "related glass articles," was incorrect.

While "related glass articles" and "related to glass articles" have different meanings, that does not affect the result here. The new subsection (f) added by the First Amendment expressly includes "technology and information" disclosed in certain patent applications filed by Corning. Those applications fall within the ambit of the Agreement; the First Amendment states that the intellectual property disclosed in those applications "shall be considered as included in 'Corning Technology' as defined in the Agreement." (Dkt. #19-3 at 18.) The 411 application expressly "relates to [certain] glass-based articles ... ." (Dkt. #1-4 at 7.) The application goes on to describe in extensive detail such articles and their physical characteristics. And as stated, the 811 patent claims priority over the 411 application, which also brings it within the scope of the new § 1(f).

-13-

I am equally unpersuaded by Xinhao's arguments that the complaint sets forth insufficient facts to support plaintiff's claims. The complaint describes at some length how the Xinhao-finished non-Corning glass used in certain Vivo phones meets each of the requirements of certain claims of Corning patents that are covered by the Agreement. *See* Complaint ¶¶ 56-59. Although some of Corning's allegations in that regard are made upon information and belief,

> [t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F.Supp.3d 344, 356 (S.D.N.Y. 2014) (quoting *Arista Records*, 604 F.3d at 120 (internal citations and quotation marks omitted); *accord Cannioto v. Simon's Agency, Inc.*, No. 19-CV-6686, 2020 WL 3542124, at *2 (W.D.N.Y. June 30, 2020).

As stated, one of Corning's claims is that Xinhao has refused to allow Corning to conduct an audit of its operations to determine whether Xinhao has in fact been violating the Agreement's provisions concerning finishing non-Corning glass. Xinhao admits that it has not allowed Corning to conduct an audit, but contends that it is justified in doing so.

Corning's allegations concerning the audit request form the basis for the second cause of action, which is addressed below, but the point here is that a defendant should not be heard to complain that the plaintiff has pleaded a claim on information and belief, when the defendant has refused to allow the plaintiff to obtain information that could demonstrate whether the claim has a solid factual basis.

-14-

That principle is illustrated in *United States ex rel. Churches as Trustee for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017) ("*Fabula*").  *Fabula* was a *qui tam* action against an ambulance company in which the Second Circuit held that the plaintiffs' complaint adequately pleaded, on information and belief, that the defendant had submitted false claims to Medicare.  Notably, the court did so even though it was applying the heightened pleading standards of Rule 9(b) of the Federal Rules, which require fraud claims to be pleaded with particularity.  *See id.* at 81 (setting forth Rule 9(b) pleading standards).  That heightened standard does not apply in the case at bar.

After reciting the particular circumstances of that case, which involved facts that were peculiarly within the defendant's knowledge, the court concluded that because the plaintiffs had not had the benefit of discovery, and because the plaintiffs had alleged facts supporting a strong inference that their claims were grounded in fact, the complaint adequately set forth a claim, even though it was based on information and belief.  *See id.* at 81-89.  In so holding, the court stated that "through no fault or lack of diligence on their part, plaintiffs lacked the ability to identify specific documents containing false claims that [the defendant] submitted to the government," but that the complaint did, however, "make plausible allegations that the bills or invoices actually submitted to the government were uniquely within [the defendant]'s knowledge and control."  *Id.* at 83.[2]

A plaintiff cannot, of course, make a purely conclusory allegation that crucial facts are peculiarly within the defendant's knowledge and control.  The general rule is that "while a

---

[2] The court went on to analyze whether the complaint adduced specific facts supporting a strong inference of fraud (which, the court concluded, it did), but that analysis relates to Rule 9(b), which does not apply here.

plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be 'accompanied by a statement of the facts upon which the belief is founded." *Negrete v. Citibank, N.A.*, 187 F.Supp.3d 454, 461 (S.D.N.Y. 2016), *aff'd*, 759 Fed.Appx. 42 (2d Cir. 2019) (internal quote omitted).  But as explained above, Corning has set forth both why it believes that Xinhao has breached the Agreement, and why Xinhao's refusal to allow Corning to conduct an audit has stymied Corning's efforts to conclusively determine whether its suspicions are correct.

Of particular note is Corning's allegation that in March 2017, Corning engineers disclosed Corning Technology for making Corning's fifth-generation Gorilla Glass to Xinhao engineers at Xinhao's facility in Shenzhen, China.  Complaint ¶¶ 44-50.  That disclosure included highly confidential technical documents regarding the techniques for making Gorilla Glass, as well as proprietary Corning software.  Those disclosures were accompanied by notices that the transferred information was to be kept confidential, and Corning now alleges that the transferred technology falls within the definition of Corning Technology in the Agreement.

Corning goes on to allege that its tests of Vivo cover glass indicate that the glass meets each of the requirements of certain claims of Corning patents that are covered by the Agreement.  *See* Complaint ¶¶ 58, 59.  Although Xinhao argues that the facts alleged by Corning do not show that Xinhao *necessarily* used Corning Technology to make or produce non-Corning glass, the federal pleading standards do not require a plaintiff to "eliminate all other possible explanations at the pleading stage.  *Twombly* and *Iqbal* impose a standard of plausibility, not probability."  *Hamilton v. 3D Idapro Solutions, LLC*, No. 18-cv-54, 2018 WL 5342695, at *3 (W.D.Wisc. Oct. 29, 2018) (citing *Twombly*, 550 U.S. at 556).  "Moreover, it is well established that a plaintiff's

-16-

'pleading burden should be commensurate with the amount of information available to'" the

plaintiff. *Id.* (quoting *Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).  As

stated, Corning alleges that its efforts to obtain more information about whether and to what

extent Xinhao has impermissibly used or disclosed Corning Technology have been thwarted by

Xinhao's steadfast refusal to allow an audit.


### 2. "Finishing" Cover Glass

Corning's allegation that the Vivo phones' cover glass employs Corning Technology

within the scope of the Agreement is only one aspect of Corning's first cause of action.  Corning

also alleges that Xinhao has finished that glass using Corning Technology, also in violation of

the Agreement.  The Agreement explicitly provides that "Corning Technology may only be

practiced on Gorilla Glass purchased by [Xinhao] from Corning."  CFA § 3(b)(ii).  *See also* First

Amendment § 2 ("In all cases, [Xinhao] may use Corning Technology only on glass supplied by

Corning").  Corning's complaint expressly alleges that "Xinhao has violated Section 3(b) and

Section 6(a) of the Agreement by finishing non-Corning cover glass using Corning Technology."

Complaint ¶ 70.

In support of its allegation, Corning has alleged, on information and belief, that Xinhao

began using Corning Technology to finish non-Corning cover glass for Vivo smartphones at least

as early as the spring of 2018.  Complaint ¶ 53.  Corning alleges that its "testing of the non-

Corning glass finished by Xinhao indicates that it was finished using ... Corning Technology,"

Complaint ¶ 60.  Corning further states that it bases its belief not only on those test results, but on

its meetings and correspondence with Vivo and Xinhao.  Complaint ¶¶ 55, 56.  That allegation is enough, at the pleading stage, to state a claim.

In support of its motion, Xinhao again argues that Corning's allegations leave open the possibility that the Vivo glass was made or finished without the use of Corning Technology.  By way of analogy, Xinhao states that a pot of water could be brought to a boil by any one of a number of means:  a gas or electric stovetop, microwave, etc.

That is a poor analogy.  Corning alleges that it has devised and patented unique methods of making and finishing glass, and that glass that meets the characteristics of such glass was probably created or finished using Corning's patented methods.  That is qualitatively different from boiling water by means of some commonly known method.

I am also not persuaded by defendant's reliance on *Panduit Corp. v. Corning Inc.*, No. 18-CV-229, 2019 WL 189817 (E.D.N.C. January 14, 2019).  *Panduit* was a patent infringement case in which the plaintiff, Panduit, alleged that the defendant, Corning, had infringed two of Panduit's patents relating to optical fiber.  In support of that claim, Panduit alleged that it had tested commercially-purchased cable containing Corning's fiber, and that the test results were consistent with what would be expected from using Panduit's patented methods.

The court dismissed the complaint, stating that Panduit had only "alleged testing results that are consistent with the use of plaintiff's method, but not that plaintiff's method was employed or that plaintiff's method is the only way in which to produce" the test results.  *Id.* at *4.  The court concluded that the plaintiff had "alleged 'a sheer possibility that a defendant has acted unlawfully,' but no more."  (quoting *Iqbal*, 556 U.S. at 678).

-18-

Based on that conclusion, the court dismissed the complaint, without prejudice.  The plaintiff later filed an amended complaint, and Corning again moved to dismiss.

The court denied the motion, stating that the "[p]laintiff's amended complaint cures the deficiencies noted in the court's prior order regarding testing of defendant's fibers to confirm infringement."  In so ruling, the court noted that Panduit's amended complaint set forth in more detail the results of its tests of Corning's product.  2019 WL 5856428, at *4 (E.D.N.C. Nov. 7, 2019).  Those results, the court said, gave rise to a plausible inference of patent infringement, and put Corning on notice of what process was being accused of infringement.

Addressing the defendant's contention that the amended complaint was still insufficiently detailed, the court stated, "A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *Id.* at *5 (quoting *K-Tech Telecom., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013)).  In a similar vein, the court stated that the fact that "plaintiff cannot provide more specifics at this juncture does not defeat the plausibility of its direct infringement claim."  *Id.* (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

In the instant case, Corning's complaint sets forth in some detail the specific characteristics of the Xinhao-finished non-Corning cover glass that Corning says lead it to believe that Xinhao has violated the terms of the Agreement.  *See* Complaint ¶ 58.  As in *Panduit*, Corning's inability to provide more detail is at least partly due to Xinhao's denial of Corning's audit request.  Such details can best be unearthed through discovery.

### C. Audit

In the second cause of action, Corning alleges that Xinhao has breached the Agreement by refusing to allow Corning to audit Xinhao's facility, as provided for in the Agreement. Corning alleges that in August and September 2018, it notified Xinhao of Corning's concerns about Xinhao's alleged misuse of Corning Technology in violation of the Agreement. Corning asked to conduct an audit and inspection of Xinhao's facilities to determine if Xinhao had been and was continuing to use Corning Technology on non-Corning glass. Complaint ¶¶ 61, 62. Corning alleges that "[d]espite multiple requests from Corning, Xinhao has not agreed to allow Corning to audit and inspect Xinhao's facility for misuse of Corning Technology on non-Corning glass." Complaint ¶ 63.

In its motion papers, Xinhao argues that Corning has sought a far broader audit than what is permitted under the Agreement. According to Xinhao, the Agreement's grant of authority to Corning to audit Xinhao's "operations and security procedures to ensure that [Xinhao] is using reasonably prudent and diligent efforts to protect Corning Technology from further disclosure and/or misuse" is far narrower than the "comprehensive audit" sought by Corning.

It is not clear from the record whether Xinhao responded at all to Corning's audit requests, whether Xinhao did respond but flatly refused those requests, or whether Xinhao objected to the scope of the request. The complaint alleges only that Xinhao "has not agreed" to allow Corning to audit Xinhao's facility. Complaint ¶ 63.

Again, the Court must decide defendant's motion based on the complaint and documents attached or integral to the complaint. The Agreement allows Corning to audit Xinhao's "operations and security procedures to ensure that [Xinhao] is using reasonably prudent and

diligent efforts to protect Corning Technology from further disclosure and/or misuse," and

Corning has alleged that Xinhao has refused to allow it to do so.  At this stage, that is sufficient

to state a claim.


## CONCLUSION

Defendant's motion to dismiss the complaint (Dkt. #16) is denied.

IT IS SO ORDERED.


_____
        DAVID G. LARIMER
    United States District Judge

Dated: Rochester, New York
        August 13, 2020.