UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CORNING INCORPORATED,

         Plaintiff,

   v.

SHENZHEN XINHAO PHOTOELECTRIC
TECHNOLOGY CO., LTD,

         Defendant.
_____

DECISION AND ORDER

18-CV-6739L

## INTRODUCTION

Plaintiff Corning Incorporated ("Corning") brought this action in 2018 against defendant Shenzhen Xinhao Photoelectric Technology Co., Ltd. ("Xinhao"). Plaintiff has asserted two causes of action, both of which allege that Xinhao has breached the terms of a contract between Corning and Xinhao relating to Xinhao's "finishing" of cell phone cover glass manufactured by Corning. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.

On August 13, 2020, the Court issued a Decision and Order (Dkt. #28) denying Xinhao's motion (Dkt. #16) to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. 478 F.Supp.3d 456. Familiarity with that decision is assumed.

On August 27, 2020, Xinhao filed an answer to the complaint (Dkt. #29), asserting several affirmative defenses, as well as counterclaims for tortious interference with contractual relationships, tortious interference with prospective economic advantage, injurious falsehood, rescission, and breach of contract.

Corning filed a motion (Dkt. #32) on October 1, 2020, to dismiss all of Xinhao's counterclaims and to strike four of its affirmative defenses. The parties thereafter stipulated to extend Xinhao's time to file an amended answer, which Xinhao did on November 5, 2020.[1] The amended answer asserted four counterclaims: tortious interference with contractual relationships, tortious interference with prospective economic advantage, rescission/reformation, and breach of contract. Unlike the original answer, which alleged tortious interference with respect to "third-party cover glass manufacturers" generically, each of the two tortious-interference counterclaims in the amended answer alleged a particular contract and contractual relationship between Xinhao and another company. The third counterclaim was similar to the rescission counterclaim in the original answer, but included additional allegations and sought either rescission or reformation of the parties' contract. The breach of contract counterclaim also added further factual allegations.

Pursuant to another stipulation of the parties, Xinhao filed a "revised corrected first amended answer" (Dkt. #45). That answer is substantially identical to the previously-filed amended answer, and contains the same counterclaims. It appears that they differ only insofar as the most recently filed answer, which was filed under seal, identifies by name the companies with which Xinhao has had contracts or sought to enter into contracts. In the previous complaint, those companies were identified by fictitious names.[2]

Corning has filed another motion (Dkt. #48) to dismiss three of Xinhao's counterclaims and to strike three of its affirmative defenses. Xinhao has responded to that motion (Dkt. #55).

---

[1] Xinhao filed two amended answers on that date (Dkt. #35, #36). The only apparent difference between them is that the second-filed answer is captioned, "Amended Answer," rather than simply "Answer."

[2] Since the revised corrected first amended answer is now the operative pleading filed by Xinhao, it will be referred to henceforth simply as the "answer."

On May 21, 2021, defense counsel advised the Court that it was withdrawing its third counterclaim for rescission/reformation, and its affirmative defense of mistake. (Dkt. #63.) What is now pending before the Court is Corning's motion to dismiss the counterclaims for tortious interference with contractual relations and prospective economic advantage, and to strike Xinhao's affirmative defenses of patent misuse and unconscionability.

## DISCUSSION

### I. Corning's Motion to Dismiss Xinhao's Counterclaims

#### A. General Principles

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *Feng Xue v. Koenig*, No. 19 Civ. 7630, 2021 WL 1092503, at *5 (S.D.N.Y. Mar. 22, 2021) (citing *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F.Supp.3d 303, 313 (S.D.N.Y. 2014)). Under that standard, to survive a motion to dismiss, the counterclaim must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020).

In deciding a Rule 12(b)(6) motion to dismiss a counterclaim, the court must accept all well-pleaded factual allegations in the counterclaim as true. *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020). The court must draw all reasonable inferences in favor of the non-moving party, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only a pleading that "states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the ... claims are barred as a matter of law.'" *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-209 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

### B. Counterclaim for Tortious Interference with Contractual Relations

In its first counterclaim, Xinhao alleges that it has "contracted with third-party mobile device companies," one of which is named, "to provide finished cover glass made from unfinished glass sourced from Corning and third-party cover-glass manufacturers for use in their mobile devices." Xinhao alleges that it and that named company "executed an agreement related to providing finished glass that took effect on April 5, 2017." (Dkt. #45 ¶ 29.)[3]

Xinhao further alleges, on information and belief, that Corning has actual knowledge of that contract, and that Corning "has engaged in acts designed to induce a breach, disruption, or otherwise render impossible performance of Xinhao's contractual relationships ... ." *Id.* ¶¶ 30-32. Specifically, Xinhao alleges that a Corning employee, Fu Juncai, told representatives of the named third-party company that Corning could not or would not sell Corning Gorilla Glass to Xinhao. *Id.*

---

[3] The company is named in the unredacted answer (Dkt. #45), which has been filed under seal. The name of the company has been redacted from the unsealed, publicly filed copy of the answer. (Dkt #42).

Xinhao further states that "[a]s a result of Corning's actions, Xinhao's contracts with mobile device companies and/or third-party cover-glass manufacturers have been breached." The counterclaim alleges that the named company "has not sourced or purchased finished Corning Gorilla Glass from Xinhao" and that "Xinhao has been unable to supply [the company] with finished Corning Gorilla Glass." *Id.* ¶¶ 33, 34.

Although framed in terms of interference with "contractual relations," this counterclaim is essentially a claim for tortious interference with contract, *i.e.*, with actual as opposed to prospective contractual relations. Under New York law, such a claim requires: "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 425 (1996)).

To state a claim for tortious interference with contract, a "plaintiff must identify the specific third-party contract with which the defendant allegedly interfered." *MMS Trading Co. Pty Ltd. v. Hutton Toys LLC*, 20-CV-1360, 2021 WL 1193947, at *12 (E.D.N.Y. Mar. 29, 2021) (citing *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F.App'x 102, 104 (2d Cir. 2012)). It is not enough to describe the contract in general terms, though; "[i]t is imperative that, in bringing a tortious interference claim, a plaintiff identify 'the relevant terms of the contract[] that existed' that were breached by defendant." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F.Supp.3d 763, 791 (S.D.N.Y. 2019) (citing *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006)).

With respect to the defendant's knowledge and intent, the defendant need not have been "aware of all the details" of the contract, but it must have had "actual knowledge of the specific contract." *Medtech Products Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 796 (S.D.N.Y. 2008). A defendant's general awareness that the plaintiff did business with third parties is not enough. *See A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, No. 12 Civ. 4828, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) ("General allegations that a party 'knew or should have known' about the contract in question fall short" of the requirements of a tortious-interference claim).

For that matter, even the alleged tortfeasor's knowledge that *some* contract existed is insufficient. Although "a plaintiff is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue," *Guzik v. Albright*, No. 16 Civ. 2257, 2018 WL 4386084, at *6 (S.D.N.Y. Sept. 14, 2018), "the plaintiff must plead specific allegations of the defendant's knowledge of the contract, including some knowledge of the terms and conditions of the allegedly interfered-with contract." *Taboola, Inc. v. Ezoic Inc.*, 17 Civ. 9909, 2020 WL 1900496, at *10 (S.D.N.Y. Apr. 17, 2020) (internal quotes and citations omitted). *See also State Street Global Advisors Trust Company v. Visbal*, 431 F.Supp.3d 322, 349 (S.D.N.Y. 2020) ("under New York law, a plaintiff must have some knowledge of the terms and conditions of the allegedly-interfered-with contract"); *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-cv-7529, 2016 WL 5414979, at *4 (S.D.N.Y. Mar. 18, 2016) ("Plaintiff must show that Defendants had actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached"); *Medtech Products Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 797 (S.D.N.Y. 2008) (finding "general claim of [a defendant's] knowledge of the contracts" insufficient to show that defendant "was aware of the limitations [the contracts] imposed"); *Sutton 58 Associates LLC*

*v. Pilevsky*, 36 N.Y.3d 297, 311 (2020) (stating that litigation of tortious-interference claim "will require resolution of whether ... plaintiff had a valid contract with the borrowers [and] defendants had knowledge of that contract *and its relevant terms*") (emphasis added), *petition for cert. filed,* No. 20-1483 (Apr. 20, 2021).

In addition to having actual knowledge of an existing contract, the defendant must also have "specifically intended to interfere with the relevant contract." *Wellington Shields*, 2016 WL 5414979, at *5. Although the defendant need not have acted out of malice, "the interference must be intentional and an interference that is merely an intrusion that is negligent or incident to some other lawful purpose is not enough." *Northern Shipping Funds I, L.L.C. v. Icon Capital Corp. Eyeglasses*, No. 12 Civ. 3584, 2013 WL 1500333, at *4 (S.D.N.Y. Apr. 12, 2013)) (internal quotation marks omitted). Accordingly, "[t]o satisfy the third element of the claim, intentional procurement of the breach, 'it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that the defendant's objective was to procure such a breach.'" *RANA Techs. Enter. v. L3Harris Techs. Inc.*, No. 20-CV-6343, 2021 WL 130972, at *5 (W.D.N.Y. Jan. 14, 2021) (quoting *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp.3d 318, 327-28 (S.D.N.Y. 2017)).

Finally, a plaintiff cannot prevail on an intentional-interference claim unless it demonstrates an actual breach of the specified contract. *See NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 620-21 (1996) ("breach of contract has repeatedly been listed among the elements of a claim for tortious interference with contractual relations"). *See, e.g., Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (affirming dismissal of a tortious interference with

contract claim on the basis that "plaintiffs fail[ed] to allege ... actual breach" of a contract where the alleged acts did "not amount to an allegation that [the contracting party] violated the terms of a contract"); *INV Accelerator, LLC v. MX Techs., Inc.*, No. 19 Civ. 2276, 2020 WL 882902, at *5 (S.D.N.Y. Feb. 24, 2020) (finding that counterclaim defendant failed to allege an actual breach of relevant contract, where "[t]here [was] no information as to how" the relevant third party breached the contract).

Corning asserts that this counterclaim must be dismissed on a number of grounds. Corning contends that Xinhao has not adequately pleaded the existence or terms of a contract with any third parties, of which Corning was aware and as to which Corning intentionally procured a breach. Xinhao responds that none of the grounds relied upon by Corning provide an adequate basis for dismissal.

Xinhao has identified only one contract, its alleged contract with a particular company. But Xinhao has pleaded little more than the name of the other company, the date of the contract, and its general subject matter. Xinhao has not alleged an actual breach of that contract, however. Xinhao has alleged that "As a result of Corning's actions, Xinhao's contracts with mobile device companies and/or third-party cover-glass manufacturers have been breached," that the named company "has not sourced or purchased finished Corning Gorilla Glass from Xinhao," and that "Xinhao has been unable to supply [that company] with finished Corning Gorilla Glass." (Dkt. #45 ¶ 33.)

On its face, then, this counterclaim does not literally allege that the identified contract was breached, but only that *some* contracts "have been breached." That is insufficient. *See ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 19-cv-7800, 2021 WL 1177532, at *19 (S.D.N.Y. Mar. 29, 2021) ("The New York Court of Appeals and the Second Circuit ... have

consistently emphasized the necessity of an actual breach by the third party") (collecting cases).  *See also Valley Lane Indus.*, 455 F.App'x at 104 ("Without providing additional factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms, the proposed amended complaint ... fails to sufficiently plead the existence of a contract").

Regardless of which contract or contracts were allegedly breached, the counterclaim does not explain the nature of the alleged breach, or which party to the contract committed the breach. Xinhao's allegations that the named company "has not sourced or purchased finished Corning Gorilla Glass from Xinhao" and that "Xinhao has been unable to supply [that company] with finished Corning Gorilla Glass" do not show that this amounted to a breach of the contract between Xinhao and that company, much less explain how it did so.  *See Popat v. Levy*, 328 F.Supp.3d 106, 132 (W.D.N.Y. 2018) ("Conclusory allegations that a breach has occurred absent any factual support are insufficient"); *Skyline Travel, Inc. v. Emirates*, No. 09 Civ. 8007, 2011 WL 1239783, at *5 (S.D.N.Y. Mar. 28, 2011) (plaintiff's allegation that "there were breaches, interferences ... [and] total failures of performance of contractual duties" was "insufficient to plead the actual breach of the [underlying] contract, which is an essential element of the tortious interference with contract claim"), *aff'd*, 476 F.App'x 480 (2d Cir. 2012).

While this counterclaim fails on that ground alone, Xinhao also fails to allege facts showing that Corning was aware of the contract and intentionally procured its breach. Xinhao's only specific allegation in this regard is that after this suit was commenced, a Corning employee told a procurement employee of the other company that Corning could not sell Gorilla Glass to Xinhao.  (Dkt. #45 ¶¶ 31, 32.)  While that might arguably show some awareness on Corning's part that there was a contract between Xinhao and the other company, to state a claim for

tortious interference with contract the plaintiff must plead facts showing not only that defendant had knowledge of the existence of a contract, but that it had "actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached." *State Street Global Advisors*, 431 F.Supp.3d at 348. *See also Symquest Group, Inc. v. Canon U.S.A., Inc.*, 186 F.Supp.3d 257, 267 (E.D.N.Y. 2016) (defendant's notifying plaintiff's end users that defendant was no longer supplying parts to plaintiff and informing them of alternative sources did not show that defendant induced end users to breach their contracts with plaintiff).

In short, Xinhao has alleged no more than the bare elements of this claim. There are virtually no factual allegations to support it. That is plainly insufficient under the federal pleading standards. *See Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss, a complaint must offer more than "bare assertions," "conclusory" allegations, or a "formulaic recitation of the elements of a cause of action"). *See also Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) ("[T]o avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation"); *Ahluwalia v. St. George's Univ., LLC*, 63 F.Supp.3d 251, 266 (E.D.N.Y. 2014) ("conclusory allegations of interference with an unspecified contract are insufficient") (internal quotation marks and citation omitted), *aff'd*, 626 F.App'x 297 (2d Cir. 2015).

The Court also notes that many of Xinhao's allegations, skeletal as they are, are made on information and belief. The law is clear that "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). "Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability

plausible'"). *Id.* at 384-85 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). That is certainly not the case here, since Xinhao would presumably be in a position to know if any of its contracts have been breached and if so, whether and how Corning played a role in the breach.

Corning also relies on the *Noerr-Pennington* doctrine, which is a judicially created defense against certain business torts for activity that implicates the First Amendment guarantee of the right to petition the government for redress of grievances. "Established by the United States Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), this First Amendment doctrine protects efforts to influence governmental action through litigation and lobbying." *Singh v. NTYCL 2009-A Trust*, 683 F.App'x 76, 77 (2d Cir. 2017). The doctrine has been extended to encompass various types of pre-litigation communications, and has been applied in the context of tortious-interference claims. *See id.*; *Singh v. City of New York*, No. 19-CV-5030, 2020 WL 5752157, at *17 n. 16 (E.D.N.Y. Sept. 24, 2020).

At oral argument on the pending motion, counsel for Corning stated that Corning does not need to rely on the *Noerr-Pennington* doctrine as to the "current iteration" of the counterclaims. Counsel for Xinhao contended that the doctrine simply does not apply here, but concurred that the Court need not decide whether it does. Since both sides agree on that score (albeit for different reasons), the Court declines to consider Corning's *Noerr-Pennington* argument.

**C. Counterclaim for Tortious Interference with Prospective Economic Advantage**

In its second counterclaim, Xinhao alleges the following.

Xinhao "has business relationships with several third-party mobile device companies and manufacturers," and Corning has knowledge of those relationships. (Dkt. #45 ¶¶ 38, 39.) In September 2020, Xinhao gave a quote to one particular company to provide finished glass, but was not awarded the contract. That company informed Xinhao that the contract had been awarded to another finisher, Kaimao Photoelectric Sci. & Tech. Co. ("Kaimao"), and that Corning had offered Gorilla Glass to Kaimao at a substantially reduced price. Xinhao alleges on information and belief that Corning deliberately sought to undercut Xinhao's bid and damage its relationship with the other company.

To state a claim for tortious interference with prospective economic advantage (also known as tortious interference with business relations), a plaintiff must allege that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)). The plaintiff must also allege that "plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct." *Downtown Music Publishing LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 766 (S.D.N.Y. 2020) (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009)). In addition, "[t]o state a claim for interference with prospective business relations under New York law, a defendant must have engaged in 'conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a

relationship.'" *MMS Trading*, 2021 WL 1193947, at *14 (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004).

The elements of this tort are similar to those of intentional interference with contract, except that the defendant's conduct must amount to a crime or an independent tort, or some "wrongful means," or the defendant must have acted "solely out of malice." *See Carvel*, 3 N.Y.3d at 190; *Friedman v. Coldwater Creek, Inc.*, 321 F.App'x 58, 60 (2d Cir. 2009). *See also Valley Lane Indus.*, 455 F.App'x at 106 ("In the case of tortious interference with business relations, ... the 'plaintiff must show more culpable conduct on the part of the defendant'" than with tortious interference with contract) (quoting *Carvel*, 3 N.Y.3d at 190).

"Wrongful means" include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" and "extreme and unfair economic pressure." *Id.* (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980), and *Carvel*, 3 N.Y.3d at 190). But "[i]f the defendant's 'motive in interfering ... was normal economic self-interest,' the defendant did not use unlawful means." *MMS Trading*, 2021 WL 1193947, at *14 (quoting *Carvel*, 3 N.Y.3d at 190); *accord Pike Co. v. Universal Concrete Products, Inc.*, No. 17-CV-6365, at *13 (W.D.N.Y. Mar. 10, 2021).

Xinhao's second counterclaim fall far short of meeting these standards. First, to the extent that the complaint alleges generally that Xinhao has business relationships with "several" third-party cover glass manufacturers and mobile device companies and manufacturers, and that Corning has engaged in unspecified acts designed to disrupt or otherwise injure those relationships, the claim is insufficiently specific. "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with

customers without any sufficiently particular allegation of interference with a specific ... business relationship.'" *16 Casa Duse*, 791 F.3d at 262 (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (App. Div. 1992)). The plaintiff must "identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage." *Lesesne v. Brimecome*, 918 F.Supp.2d 221, 227 (S.D.N.Y. 2013); *see also Deaton v. Napoli*, 17-CV-4592, 2019 WL 4736722, at *8 (E.D.N.Y. Sept. 27, 2019) ("Failure to identify a specific business relationship with a third party is a 'fatal' deficiency to pleading tortious interference"). *See, e.g.*, *Kid Car NY, LLC v. Kidmoto Techs. LLC*, __ F.Supp.3d __, 2021 WL 466975, at *14 (S.D.N.Y. 2021) ("To the extent the Counterclaim fails to identify a specific business relationship, its claim for tortious interference with prospective business advantage cannot survive a motion to dismiss").

Xinhao has identified only one third party, the company to which Xinhao submitted a bid in September 2020. Xinhao alleges that the company had purchased finished Gorilla Glass from Xinhao in the past, but on this occasion awarded the contract to a competitor of Xinhao.

The only alleged act of Corning in connection with this matter is that Corning offered its glass to Xinhao's competitor at a "substantially reduced price." It was entirely within Corning's purview to do so. There are no facts alleged that Corning engaged in dishonest or otherwise improper behavior, or that it acted "solely out of malice" with intent to harm Xinhao. *See Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826, 2017 WL 5992355, at *12 (E.D.N.Y. Aug. 10, 2017); *United Mag. Co. v. Murdoch Mags. Distr.*, 146 F.Supp.2d 385, 408 (S.D.N.Y. 2001), *aff'd*, 279 F.App'x 14 (2d Cir. 2008).

Even if Corning offered Gorilla Glass to Xinhao's competitor at a low price in the hope that the competitor would be awarded the contract at issue, that was not wrongful. At the time Xinhao

submitted its bid in September 2020, Corning had long since ceased providing Gorilla Glass to Xinhao because of Corning's belief that Xinhao was violating the parties' contract. It was entirely rational and reasonable for Corning to offer to sell Gorilla Glass to a different company at an attractive price, hoping that the end user would accept that company's bid and purchase Gorilla Glass.

At most, then, Corning simply acted out of "normal economic self-interest," which without more does not give rise to a claim. *See 16 Casa Duse*, 791 F.3d at 261 ("When a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate'") (quoting *Carvel*, 3 N.Y.3d at 190); *see, e.g.*, *Exec. Trim Constr., Inc. v. Gross*, No. 20-cv-544, 2021 WL 919865, at *9 (N.D.N.Y. Mar. 10, 2021) (allegation that defendant, a former employee of plaintiff, made disparaging remarks about plaintiff to a potential customer in an attempt to divert business to his new employer showed no more than that defendant acted out of normal self-interest). In short, all that Xinhao alleges is that it lost out on one bid because Corning offered its Gorilla Glass to a competitor of Xinhao at a relatively low price. That does not provide a basis for a claim of tortious interference with prospective economic advantage.

Xinhao's assertion that Corning has used "economic pressure" to induce third parties not to do business with Xinhao fares no better. For one thing, Corning's single alleged act–agreeing to sell Gorilla Glass to Xinhao's competitor at a low price–was not directed toward any third party with whom Xinhao sought to enter into a contractual relationship. *See MMS Trading*, 2021 WL 1193947 at *14 ("To state a claim for interference with prospective business relations under New York law, a defendant must have engaged in 'conduct directed ... at the party with which the plaintiff has or

seeks to have a relationship'") (quoting *Carvel*, 3 N.Y.3d at 192). *See also G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (claim dismissed because alleged conduct was not directed at plaintiff's customers); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp. 477, 482 (S.D.N.Y. 1997) ("under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must ... direct some activities towards the third party"); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 167-168 (S.D.N.Y. 1998) (finding that claim failed because "defendants' alleged conduct concededly was not directed towards any third party with whom [plaintiff] had an existing or prospective business relationship").

Second, there was no "pressure" of any kind exerted here against anyone. Cases in which courts have found economic pressure sufficiently alleged typically involve what amount to strong-arm tactics or a threat of negative consequences should the third party not accede to the defendant's demands. *See, e.g.*, *Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC*, 317 F.Supp.2d 301, 334-35 (S.D.N.Y. 2003) (plaintiffs, who owned an independent movie theater, sufficiently stated claim for tortious interference with prospective contractual relations based on allegation that defendant theater chains used their monopsony status to pressure film distributors into entering exclusive licensing agreements for the distribution of top commercial films, thereby closing plaintiffs out of the market); *Drug Emporium, Inc. v. Blue Cross of Western N.Y., Inc.*, 104 F.Supp.2d 184, 192 (W.D.N.Y.2000) (allegations that pharmacies pressured HMO to exclude competitor from network sufficient to withstand motion to dismiss); *Italian and French Wine Co. v. Negociants U.S.A.*, 842 F.Supp. 693, 701-02 (W.D.N.Y. 1993) (wine distributor liable where it threatened to cease distribution of supplier's wine unless supplier breached contract with plaintiff).

Nothing of the sort is alleged here. Presumably, Xinhao's competitor was quite happy to obtain Gorilla Glass at a good price, as was the end user that awarded the contract to the competitor. *See Carvel*, 3 N.Y.3d at 192 ("Here, all Carvel did to the [plaintiff] franchisees' customers was to make Carvel goods available in supermarkets at attractive prices; this ... was not 'pressure' on these third parties but legitimate 'persuasion,' and thus tortious interference with economic relations was not established"); *Flash Electronics, Inc. v. Universal Music & Video Distr. Corp.*, 312 F.Supp.2d 379, 405 (E.D.N.Y. 2004) ("offers of special treatment ... seem more on the level of 'persuasion' than anything else").

In sum, all that Xinhao has shown is that Corning's willingness to furnish Gorilla Glass to Xinhao's competitor at a relatively low price put Xinhao at a disadvantage when it submitted a bid on one particular contract. If that were all it took to make out a claim for tortious interference, the courts' dockets would be clogged with such cases. Fortunately, it is *not* that easy. With the aim of "striking a balance between 'respect for individual contract rights' and the 'public benefit to be derived from unfettered competition,'" *Flash Elec.*, 312 F.Supp.2d at 404 (quoting *Guard-Life*, 50 N.Y.2d at 19), courts have set a "high bar" for pleading such claims, *16 Casa Duse*, 791 F.3d at 262. Xinhao has not met that bar.


## II. Corning's Motion to Strike Affirmative Defenses

### A. Patent Misuse

Corning has moved to strike two of Xinhao's affirmative defenses: "patent misuse" and "unconscionability." In the patent misuse defense, Xinhao alleges that "Corning is attempting to impermissibly broaden the physical scope of its U.S. patents beyond the territory of the U.S. to

capture activities occurring in China with anticompetitive effect." (Dkt. #45 at 23-24.) In its unconscionability defense, Xinhao asserts that the parties' agreement is unenforceable as unconscionable for several reasons, which are set forth and discussed below.

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." For such a motion to be granted, it must be evident from the face of the defense that it is legally insufficient and that it does not plausibly set forth grounds for the asserted defense. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019). The court may also consider whether the plaintiff would be prejudiced if the defense is not stricken. *Id.* at 99.

Motions to strike affirmative defenses are generally disfavored, however, and "the standard for a plaintiff to prevail is demanding." *Trustees v. M.C.F. Associates*, No. 20-cv-1033, 2021 WL 1199494, at *2 (S.D.N.Y. Mar. 30, 2021). Nevertheless, motions to strike "can serve a useful and even important purpose." *In re Ajasa*, 627 B.R. 6, 18 (Bankr. E.D.N.Y. 2021). "Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) (internal quote omitted). *See also Simon v. Manufacturers Hanover Trust Co.*, 849 F.Supp. 880, 882 (S.D.N.Y. 1994) ("motions to strike serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case") (internal quote omitted). If an affirmative defense is facially meritless, a motion so strike should therefore "be granted where doing so will clarify the issues and streamline the case for trial." *Meisels v. Meisels*, No. 19-CV-4767, 2021 WL 1924186, at *9 (E.D.N.Y. May 13, 2021).

Patent misuse is an equitable defense to a claim of patent infringement. *See U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005). The defense "arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed.Cir. 1998). The purpose of the defense is to "prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992).

To prove patent misuse, the alleged infringer must show that "the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (internal quotation marks omitted). If such a showing is made, the patent is rendered unenforceable but not rendered invalid. *C.R. Bard, Inc.*, 157 F.3d at 1372. *See also Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) ("When the patentee has used restrictive conditions on licenses or sales to broaden the scope of the patent grant, [courts] have held that an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim") (internal quotation marks, citations, and alterations omitted).

In support of its motion to strike, Corning argues that this defense fails because Corning has not brought a claim of patent infringement against Xinhao. Corning's claims in this action sound in breach of contract.

While patent misuse is most often asserted in patent infringement cases, courts have recognized its potential applicability in other contexts. *See*, *e.g.*, *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) (express conditions accompanying sale or license of a patented

product "are contractual in nature and are subject to ... equitable considerations such as patent misuse"); *Home Gambling Network, Inc. v. Piche*, No. 05-cv-610, 2013 WL 5492568, at *11 (D.Nev. Sept. 30, 2013) ("Because Plaintiffs bring a claim for breach of contract to enforce provisions of a license agreement that impermissibly encompasses subject matter they affirmatively surrendered during the course of patent prosecution, the doctrine of patent misuse bars their claim"); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10 Civ. 6100, 2012 WL 3114855, at * 13 (S.D.N.Y. July 31, 2012) ("If a party seeks to enforce an invalid or unenforceable patent or attempts to use its market position to secure license payments on products that are not within the scope of its patents, patent misuse will be a defense to breach of contract"). *See also Eastman Kodak Co. v. Ricoh Co.*, No. 12 Civ. 3109, 2013 WL 4044896, at *6 (S.D.N.Y. Aug. 9, 2013) (stating, in suit for breach of patent license agreement, that "the fact that a doctrine originates in the body of federal patent law, does not mean that it will not find application in state contract law").

When courts have found the defense applicable to non-patent claims, the claims typically had some close connection to a patent, such as claims relating to contracts for the sale or licensing of a patented product. *See*, *e.g.*, *Cohn v. Compax Corp.*, 87 A.D.2d 364, 373 (2d Dep't 1982) (concluding that question of whether certain provisions in contract for sale and assignment of plaintiff's patent rights, concerning duration of defendant's obligation to make royalty payments, constituted patent abuse had to await a plenary trial, and that defendant's motion for partial summary judgment was properly denied); *see also Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F.Supp.3d 421, 428 (E.D.N.Y. 2017) (finding issues of fact concerning patent misuse defense in suit for breach of parties' settlement agreement arising out of prior patent infringement suit).

In the case at bar, the parties' General Commercial Framework Agreement and the First Amendment (collectively "Agreement") to that agreement reference Corning patents and patent applications in several places. In general, the Agreement provides that technology and information contained in those patents and patent applications are included within the definition of "Corning Technology." The Agreement also provides that Corning will transfer Corning Technology to Xinhao and grant Xinhao a limited license to implement and practice that technology, consistent with the terms of the Agreement. It was Xinhao's alleged unauthorized use of Corning Technology that gave rise to this lawsuit.

Corning's patents, then, clearly have some bearing on its contract claims. Xinhao argues, in effect, that Corning, knowing that it cannot bring a claim for infringement of a U.S. patent based on acts occurring entirely in China, is attempting to bring a *de facto* infringement claim in the guise of a breach of contract claim. Corning, Xinhao alleges, is thus impermissibly trying to extend the geographical scope of its patents.

There is case authority supporting the view that a patentee's attempt to expand the geographical reach of its patent beyond that inherent in the patent itself can constitute patent misuse. *See Finjan, Inc. v. ESET, LLC*, No. 17-cv-183, 2017 WL 4358128, at *4 (S.D.Cal. Oct. 2, 2017) (finding that defendant in patent infringement suit had sufficiently alleged patent misuse based on theory that plaintiff patentee tied licenses to the patents in suit to sales of products in jurisdictions where plaintiff did not hold any patents); *Tessera, Inc. v. UTAC (Taiwan) Corp.*, No. 10-cv-4435, 2016 WL 8729937, n. 3 (N.D.Cal. Jan. 15, 2016) (stating that if licensing agreement for products patented in the U.S. called for royalty payments for products sold anywhere in the world, that might constitute patent misuse).

The case at bar does not involve a tying arrangement or royalty payments, but the essence of this affirmative defense is that Corning is attempting to use the parties' Agreement to extend the reach of its U.S. patents into China. Under the Agreement, Corning granted Xinhao a limited license to practice Corning Technology (which includes technology and information disclosed in Corning's patents), with several conditions attached concerning how and under what circumstances Xinhao may do so. Xinhao alleges that Corning is now seeking in this lawsuit to use those conditions as a substitute for an infringement claim.

Although the Court harbors some doubts about the viability of this defense, it is not facially meritless. Corning's motion to strike this defense is therefore denied.

In addition, Corning has not demonstrated that it will be prejudiced by the inclusion of this defense. At oral argument, Corning's attorney asserted that the continued presence of the patent misuse defense will unnecessarily broaden the scope of discovery. I find that argument unpersuasive. Xinhao's alleged misuse of Corning Technology lies at the heart of this case. Since the Agreement's definition of Corning Technology expressly references technology disclosed in Corning's patents, discovery will necessarily relate to those patents, whether this defense is present or not.

In any event, a "factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *GEOMC*, 918 F.3d at 98.

In so ruling, the Court expresses no view as to the actual merits of this defense, and to be sure, Xinhao will have to surmount several obstacles to establish the defense. For one, the Supreme

Court has held that parties are free to contractually agree to rights and obligations that exceed those inherent in the patent itself, as long as they do so for their mutual convenience and not because the patentee has used its "patent power" to coerce the other party into accepting those terms. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969). Xinhao will have to show, then, that Corning imposed conditions that "derive their force from the patent[s]." *Princo*, 616 F.3d at 1328. In addition, Xinhao will have to prove not only that Corning impermissibly broadened the scope of its patents, but that Corning did so with anticompetitive effect. *C.R. Bard*, 157 F.3d at 1372 (describing anticompetitive effect as the "key inquiry"). Whether Xinhao can carry that burden, or whether this defense might properly be challenged on a summary judgment motion remains to be seen, but at this point I find the defense facially sufficient.

### B. Unconscionability

New York law defines an unconscionable contract "as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *McFarlane v. Altice USA, Inc.*, No. 20-CV-1297, 2021 WL 860584, at *8 (S.D.N.Y. Mar. 8, 2021) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)). "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforcible because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v. Fox*, 7 N.Y.3d 181, 191 (2006). *See also Morad v. Morad*, 27 A.D.3d 626, 626 (2d Dep't 2006) ("An unconscionable bargain is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the

inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense") (citing *Christian v. Christian*, 42 N.Y.2d 63, 71 (1977)).

A contract or contractual provision may be deemed unenforceable as unconscionable "only where it is 'both procedurally and substantively unconscionable when made.'" *Spinelli v. N.F.L.*, 903 F.3d 185, 208 (2d Cir. 2018) (quoting *Gillman*, 73 N.Y.2d at 10). "The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." *Gillman*, 73 N.Y.2d at 10-11. This examination requires a consideration of several factors, including "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* (internal citations omitted).

An agreement is substantively unconscionable "if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F.Supp.2d 564, 569 (S.D.N.Y. 2013) (citing *Lawrence v. Miller*, 11 N.Y.3d 588, 594 (2008)). *See also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) (substantive unconscionability under New York law looks at whether contract terms are "unreasonably favorable to ... [one] party").

In the case at bar, Xinhao alleges that the Agreement is unconscionable in view of three things: (1) Corning's refusal to provide a translation of the Agreement; (2) the disparity of bargaining power between Corning and Xinhao; and (3) Corning's attempt to use the Agreement to preclude Xinhao from finishing glass supplied by third-party glass manufacturers using technology and know-how provided to Xinhao by those manufacturers for use on their own cover glass. Xinhao

asserts that to enforce the Agreement as it is interpreted by Corning would transform the Agreement into an exclusive finishing arrangement that was never contemplated by the parties.

I agree with Corning that this defense should be stricken. It is largely conclusory, and to the extent that Xinhao has alleged facts, those facts do not support it.

First, there is no evident reason why Xinhao was prevented from hiring its own translator. This was not a contract between Corning and an individual, non-English-speaking consumer without the means to have the document translated. Presumably Xinhao was satisfied that it understood the terms of the Agreement when it signed the document.

Xinhao's formulaic reference to the "disparity of bargaining power" between the parties is wholly conclusory. Contrary to Xinhao's assertion that this disparity is "manifest by the Agreement and Corning's agreements with ... Other Finishers," Dkt. #45 at 21, that is not at all apparent from the face of the Agreement or anything else in the record. Again, this was not a consumer contract, but a contract between two companies, and there is nothing to suggest that it was entered into as anything other than the result of arms-length dealings. *See Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, No. 16 Civ. 2767, 2016 WL 6906583, at \*7 (S.D.N.Y. Nov. 16, 2016) ("Defendants cannot now baldly plead unconscionability despite having known and agreed to the terms of the Transaction Documents").

Finally, Xinhao's arguments concerning the manner in which Corning has interpreted or attempted to use the Agreement does not relate to the contract's unconscionability, but to contract interpretation. Xinhao asserts that it has *not* done anything prohibited by the Agreement, and that Corning's allegations are based on an incorrect and unreasonable interpretation of the contract. But

Xinhao has not pointed to anything in the Agreement itself that so unfairly favors Corning as to be deemed unconscionable.

"[A]n affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC*, 918 F.3d at 98. For the reasons stated above, I conclude that Xinhao's defense of unconscionability is facially insufficient, and the Court grants Corning's motion to strike this defense. *See Don King Productions, Inc. v. Douglas*, 742 F.Supp. 778, 781 (S.D.N.Y. 1990) ("The unconscionability defense ... shall be stricken, there having been no proffer or allegation sufficient to establish either its procedural or substantive elements"); *see also Passelaigue v. Getty Images (US), Inc.*, 2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018) (dismissing plaintiff's unconscionability claim where "there [we]re no allegations that [defendant] did anything so as to effectively deprive Plaintiff of a meaningful choice").

**CONCLUSION**

Plaintiff's motion to dismiss defendant's counterclaims and to strike affirmative defenses (Dkt. #48) is granted in part and denied in part.

Defendant's counterclaim for rescission/reformation has been voluntarily withdrawn by defendant, and is dismissed with prejudice. Defendant's counterclaims for tortious interference with contractual relations and for tortious interference with prospective economic advantage are dismissed with prejudice, on the merits.

Defendant's affirmative defense of mistake is stricken as withdrawn. Defendant's affirmative defense of unconscionability is stricken.

In all other respects, plaintiff's motion is denied.

Plaintiff's motion to dismiss and to strike (Dkt. #32), which related to an earlier iteration of defendant's answer, is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      June 24, 2021.